NORTHERN ALASKA ENVIRONMEN-
TAL CENTER, Plaintiff-Appellee,

v.

Donald P. HODEL, et al., Defendants,

· and

Alaska Miners Association, et al.,
Defendants-Intervenors-Appellants.

No. 86–3535.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 12, 1986.

Decided Oct. 23, 1986.

Philip S. Barrett, Sierra Club Legal Defense Fund, Inc., Juneau, Alaska, for plaintiff-appellee.

Martin W. Matzen, Dept. of Justice, Land & Nat. Resource Div., Washington, D.C., for defendants.

James S. Burling, Robin L. Rivett, Pacific Legal Foundation, Sacramento, Cal., for defendants-intervenors-appellants.

Before WRIGHT and FARRIS, Circuit Judges, and LETTS,* District Judge.

EUGENE A. WRIGHT, Circuit Judge:

This litigation arises from the clash of the differing interests of the National Park Service (NPS), miners and environmentalists over mining in Alaska's national parks. We must decide whether the district court abused its discretion in entering a preliminary injunction which effectively barred mining after the 1985 season until proper environmental analyses are performed. We hold that it did not.

ISSUES

(1) Did the court abuse its discretion in denying joinder of all miners who had submitted operations plans to the NPS?

(2) What is the effect of NPS's plan to prepare minerals management plans and Environmental Impact Statements (EIS) evaluating the cumulative effects of mining in Wrangell-St. Elias, Yukon-Charley Rivers and Denali parks?

(3) Did the court err in requiring NPS separately to consider access permit applications?

(4) Did the court err in invalidating 36 C.F.R. § 9.10(c), which mandates automatic approval of operations plans not acted on by NPS in a timely fashion?

(5) Did the court abuse its discretion in granting the preliminary injunction?

BACKGROUND

On May 8, 1985, the Northern Alaska Environmental Center, the Denali Citizens Council and the Sierra Club (collectively "NAEC") sued to restrain the NPS from approving mining plans and access permits in Alaska's national parks until complying fully with the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321–70a, and NPS regulations implementing the Mining in the Parks Act, 16 U.S.C. §§ 1901–12. NAEC moved for a preliminary injunction, and the government moved to join all miners having approved or pending operations plans.

The court denied the joinder motion and granted a preliminary injunction. It required the NPS to: (1) prepare environmental assessments before approving any further mining plans; (2) cease using its temporary approval authority without prior court approval; (3) consider separately the grant or denial of access permits where such permits are required by NPS regulations; and (4) prepare EIS's considering cumulative environmental effects before approving or permitting any further mining operations in two of Alaska's national parks, Wrangell-St. Elias National Park and Preserve and the Yukon-Charley Rivers National Preserve. The court also voided the 1985 mining approvals and directed the NPS to order the shutdown of existing mining operations within 45 days.

The Alaska Miners Association and Resource Development Council for Alaska (AMA) intervened as defendants and obtained a modification of the injunction to permit continuation of existing operations until the close of the mining season, October 15, 1985. The government moved for reconsideration of the cumulative EIS issue, and NAEC moved to expand that requirement to include Denali National Park and Preserve. The court denied the government's motion and granted NAEC's.

Initially, both the miners and the government appealed. The government has since

* Hon. J. Spencer Letts of the Central District of California.

dropped its appeal. It has decided to prepare comprehensive EIS's on the Denali, Wrangell-St. Elias and Yukon-Charley River areas. According to the Federal Register notice, the EIS's will address the cumulative effects of "all past, present, and reasonably forseeable [sic] future mining and mineral development activities in each park." 51 Fed.Reg. 16903 (May 7, 1986).

ANALYSIS

(1) *Joinder*

The government moved to join as necessary parties under Fed.R.Civ.P. 19(a)[1] all miners who had submitted operations plans to the NPS. It cited prohibition of mining as the practical consequence of the relief plaintiffs sought. It urged that the injuries suffered by these persons could not be articulated adequately by others, and that failure to name the defendants subjects them to substantial risks of inconsistent obligations. Finally, it argued that joinder is feasible.

The court disagreed. It held that joinder was infeasible due to the geographically scattered nature of Alaska mining and that the "public interest" exception to Rule 19 applied.

■ We review Rule 19 determinations for abuse of discretion. *Bakia v. County of Los Angeles*, 687 F.2d 299, 301 (9th Cir.1982) (per curiam). "There is no precise formula for determining whether a particular nonparty should be joined under Rule 19(a). ... The determination is heavily influenced by the facts and circumstances of each case." *Id.*

■ We can affirm on any basis supported in the record. *Smith v. Block*, 784 F.2d 993, 996 n. 4 (9th Cir.1986). We conclude that the absent miners do not satisfy the requirements for a "necessary party" under Fed.R.Civ.P. 19(a). *See Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir.) (because government was not necessary party, court need not consider whether joinder is feasible, and, if not, whether government's presence would be indispensable), *cert. denied*, 464 U.S. 849, 104 S.Ct. 156, 78 L.Ed.2d 144 (1983).

Rule 19(a) applies where joinder would have either of two effects. First, joinder must be ordered if complete relief cannot be accorded among the parties. Fed.R. Civ.P. 19(a)(1). There is no suggestion that the miners' absence would preclude the court from fashioning meaningful relief among NAEC, AMA and NPS. *See Eldredge v. Carpenters 46 Northern California Counties Joint Apprenticeship and Training Committee*, 662 F.2d 534, 537 (9th Cir.1981) (while desirable to join all 4500 employees to eradicate sex discrimination, relief on plaintiff's claims against the defendant can be afforded by an injunction against that party alone), *cert. denied*, 459 U.S. 917, 103 S.Ct. 231, 74 L.Ed.2d 183 (1982).

Next, we consider whether the absentee "claims an interest relating to the subject of the action." Fed.R.Civ.P. 19(a)(2). If the interest requirement is not satisfied, we need not reach the factors in clauses (2)(i) and (ii).

Here, the absent miners do not possess the requisite legally protected interest in the subject matter. *See* 3A *Moore's Federal Practice* ¶ 19.07[2.–0], at 19–99 (2d ed. 1986) (must be legally protected interest, not merely financial interest or interest of convenience).

---

1. Fed.R.Civ.P. 19(a) provides in pertinent part:

    **Rule 19. Joinder of Persons Needed for Just Adjudication**

    **(a) Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

The "subject matter" of this dispute concerns NPS procedures regarding mining plan approval. Naturally, all miners are "interested" in how stringent the requirements will be. But miners with pending plans have no legal entitlement to any given set of procedures. *See Sierra Club v. Watt*, 608 F.Supp. 305, 321–24 (E.D.Cal. 1985) (mineral interest owners do not have legally protected interest in dispute concerning propriety of Secretary of Interior's orders on removal of lands from wilderness inventory).[2] Denial of the joinder motion was not an abuse of discretion.

#### (2) *Cumulative EIS Requirement*

■ Appellants contest the court's requirement that enjoins the federal defendants from permitting any further mining in Wrangell-St. Elias, Yukon-Charley Rivers and Denali parks "until adequate environmental impact statements have been prepared that study the cumulative environmental effects of mining in those parks." Preliminary Injunction, ¶ 8. They assert that the court may not require cumulative EIS's where the NPS has not yet prepared an environmental analysis (EA) under NEPA. They urge us to remand the issue to NPS to make an adequate record.

The federal appellees inform us that they intend to comply fully with Judge von der Heydt's order. And they will go further.

They plan to develop minerals management plans (MMP's) following preparation of EIS's addressing, among other things, the cumulative environmental impacts of scattered mining operations in the three affected parks. Notice of the agency's intention to prepare MMP's and EIS's was published in the Federal Register.

This change of position by NPS suggests that the cumulative EIS issue is moot.[3]

The NPS has confessed to NEPA violations and voluntarily has agreed to comply with the injunction order, regardless of the outcome of this appeal.

This situation is analogous to a settlement on appeal. NAEC and NPS have resolved their differences on the cumulative EIS issue. *See Operating Engineers Local Union No. 3 v. Bohn*, 737 F.2d 860, 862–63 (10th Cir.1984) (defendants' concession to modify contract afforded plaintiff the substantive relief sought); 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3533.2, at 238 (2d ed. 1984). We will not intrude.

#### (3) *Access Permits*

■ In its complaint, NAEC alleged that NPS was violating its own regulations concerning access to claims. The court agreed. It ordered NPS to follow the procedures established in 36 C.F.R. §§ 13.10 through 13.15 and to "separately consider and authorize or deny the permit application." Preliminary Injunction, ¶¶ 5, 6.

AMA now asserts that the court made an erroneous legal interpretation. First, AMA mischaracterizes the court's remedy. It does not require separate access permits, merely separate consideration of access issues.

Second, Section 13.15 requires NPS access permits to inholdings. Subpart (b) describes the application requirements. Section 1110(b) of the Alaska National Interest Lands Conservation Act (ANILCA) guarantees adequate access to valid mining claims notwithstanding any other law. 16 U.S.C. § 3170(b). Recognizing this provision, 36 C.F.R. § 13.15(d)(1) provides:

(d) *Clarification of the Applicability of 36 CFR Part 9.* (1) 1872 Mining Law

---

**2.** The interests of operators with approved 1985 plans are now moot. The court permitted that mining season to proceed before the injunction took effect.

**3.** The government argues that the change of position moots its appeal, but not AMA's. It fails to consider mootness of particular issues, however. *See* 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure*

§ 3533.2, at 238–39 (2d ed. 1984) (individual issues may be mooted by defendant's voluntary compliance). Federal courts cannot decide moot issues that the parties seek to have resolved. *Lake Coal Co. v. Roberts & Schaefer Co.*, — U.S. —, 106 S.Ct. 553, 554, 88 L.Ed.2d 418 (1985); *United States v. Yakima Tribal Court*, 794 F.2d 1402, 1404–05 (9th Cir.1986).

Claims and 36 CFR Subpart 9A. Since section 1110(b) of ANILCA guarantees adequate and feasible access to valid mining claims within park areas notwithstanding any other law, and since the 36 CFR 9.3 requirement for an approved plan of operations prior to the issuance of an access permit may interfere with needed access, 36 CFR 9.3 is no longer applicable in Alaska park areas. However, holders of patented or unpatented mining claims under the 1872 Mining Law (30 U.S.C. 22 *et seq.*) should be aware that 36 CFR 9.9, 9.10 independently require an approved plan of operations prior to conducting mining operations within a park area (except that no plan of operations is required for patented claims where access is not across federally-owned parklands).

The court's interpretation of these regulations to require separate consideration of access issues is neither unreasonable nor contrary to law. In opposing the preliminary injunction motion, the NPS provided affidavits stating that it has reviewed and approved at least two separate access permits for the 1985 season. Further, it stated:

[T]he Park Service typically treats access to mining claims as part of a plan of operations. It does not require an access permit in connection with an individual mining operation unless the desired access involves the construction of a new transportation system, or it is determined by the Park Service that a separate permit is required for access.

Although its position statement is ambiguous, NPS seems to admit that it has not been following its regulations. The court was aware that, for seven years, the NPS had been approving operations plans under its temporary approval authority. Often, the plans also encompassed access. The requirement that access be given separate consideration pursuant to the NPS regulations will not be disturbed.[4]

### (4) *36 C.F.R. § 9.10(c): Ripeness*

■ AMA raises a ripeness challenge to the court's invalidation of 36 C.F.R. § 9.10(c), which provides:

Failure of the Regional Director to act on a proposed plan of operations and related permits within the time period specified shall constitute an approval of the plan and related permits for a period of three (3) years.

The court enjoined approval of operations plans until EA's have been completed. Preliminary Injunction, ¶ 2. Further, it enjoined the grant of temporary approvals under 36 C.F.R. § 9.10(g)[5] absent prior court approval. *Id.* ¶ 3. Then, it held: "To the extent this section allows approvals absent prior EA's, it is contrary to the terms of NEPA and void." Memorandum and Order, at 8 n. 7.

NPS has conceded that mining can cause major adverse environmental impacts in Alaska's national parks. To give teeth to the court's EA requirement and the prohibition on the use of temporary approval power, the district court necessarily had to consider the validity of Section 9.10(c).

AMA's ripeness argument fails. We are not faced with abstract disagreements over administrative policies. This controversy, involving all aspects of mining plan approval, is concrete and definite. *See Babbitt v. United Farm Workers*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) (ripeness inquiry is whether there is a definite and concrete dispute); *Assiniboine and Sioux Tribes of the Fort Peck Indian*

---

**4.** We do not consider AMA's argument based on public access over state routes because it was not made below.

**5.** 36 C.F.R. § 9.10(g) provides:

Pending approval of the plan of operations, the Regional Director may approve, on a temporary basis, the continuation of existing operations if necessary to enable timely compliance with these regula-

tions and with Federal, State, or local laws, or if a halt to existing operations would result in an unreasonable economic burden or injury to the operator. Such work must be conducted in accordance with all applicable laws, and in a manner prescribed by the Regional Director and designed to minimize or prevent significant environmental effects.

*Reservation v. Board of Oil and Gas Conservation,* 792 F.2d 782, 788–89 (9th Cir. 1986) (same).

### (5) *Propriety and Scope of the Injunction*

■ AMA attacks the propriety and scope of the preliminary injunction. But it faces a difficult standard of review. Reversal is appropriate only for an abuse of discretion or where the decision is based on erroneous legal standards or clearly erroneous factual findings. *Village of Gambell v. Hodel,* 774 F.2d 1414, 1419 (9th Cir.1985), *cert. granted,* — U.S. —, 106 S.Ct. 2274, 90 L.Ed.2d 717 (1986).[6]

Under the "traditional test" typically applied in cases involving the public interest, "a preliminary injunction is justified when: (1) the moving party has established a strong likelihood of success on the merits; (2) the balance of irreparable harm favors the moving party; and (3) the public interest favors the issuance of an injunction." *Regents of the University of California v. American Broadcasting Cos., Inc.,* 747 F.2d 511, 515 (9th Cir.1984) (*"ABC"*); *American Motorcyclist Association v. Watt,* 714 F.2d 962, 965 (9th Cir.1983).

Judge von der Heydt found violations of NEPA and NPS regulations. He concluded that NAEC had shown probable success on the merits and possible irreparable environmental injury to the parks. Memorandum and Order, at 11. Further, he noted that "the public interest favors the granting of an injunction." *Id.*

Appellants have not demonstrated that the injunction should be overturned. The factual findings regarding environmental harm caused by mining are not clearly erroneous. Contrary to AMA's assertion, the court balanced the hardships. More than pecuniary harm must be demonstrated. *ABC,* 747 F.2d at 519.

Further, the court has broad discretion in fashioning injunctive relief in this situation. *See People ex rel. Van de Kamp v. Tahoe Regional Planning Agency,* 766 F.2d 1319,

1324 (9th Cir.1985) (court has greater power to fashion equitable relief in defense of the public interest than it has when only private interests are involved), *amended,* 775 F.2d 998 (9th Cir.1985). We cannot say that there was an abuse of discretion.

Nor is there an overbreadth problem. Given NPS' prior record of noncompliance, it was entirely proper for the court to enjoin further mining until proper environmental analyses are conducted.

In affirming, we are not completely unsympathetic to the miners' plight. We recognize the real financial hardship that the court's order poses to them. We caution the district court that it must not ignore those concerns in passing on plans for mining operations. It should consider the miners' hardships to the extent that such consideration is not inconsistent with protection of the environment.

The preliminary injunction is AFFIRMED.

---

**6.** The government informs us that its petition for certiorari in *Gambell* attacks this court's rule that a preliminary injunction should issue when a federal agency has violat-

ed the procedural requirements of an environmental statute. But the district court did not apply that rule here.