872 F.2d 901
 19 Envtl. L. Rep. 20,865
 NORTHERN ALASKA ENVIRONMENTAL CENTER; Sierra Club; Denali
Citizens Council, Plaintiffs-Appellants,
v.
Manuel LUJAN, Jr.*, et al., Defendant-Appellee,
and
Alaska Miners Association; Resource Development Council for
Alaska, Inc., Defendant-Intervenors.
 No. 88-3819.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 7, 1989.
Decided April 14, 1989.
 
 Eric P. Jorgensen, Sierra Club Legal Defense Fund, Inc., Juneau, Alaska, for plaintiffs-appellants.
 Martin W. Matzen, U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.
 James S. Burling, Pacific Legal Foundation, Anchorage, Alaska, for defendant-intervenors-appellee.
 Appeal from the United States District Court for the District of Alaska.
 Before WRIGHT and ALARCON, Circuit Judges, and RAFEEDIE,** District Judge.
 ALARCON, Circuit Judge:
 
 
 1
 The Northern Alaska Environmental Center, the Sierra Club, Alaska Chapter, and Denali Citizens Council (Appellants) appeal from the order granting summary judgment in favor of the Secretary of the Interior and the National Park Service (NPS) on this claim for declaratory and injunctive relief regarding the practice of the NPS of "approving plans of operations, methods of access, and transportation systems without determining whether the miner has a valid existing right to conduct mining operations." Complaint, Count 3.[1]
 
 
 2
 We must decide whether Congress has imposed a duty upon the Secretary of the Interior, acting through the NPS (Secretary), to determine whether a discovery of valuable minerals has been made before approving a plan of operations for an unpatented mining claim on land within a national park. Because we conclude that none of the applicable statutes require the Secretary to conduct an on-site-field inspection and mineral examination to determine whether a valuable discovery has been made, we affirm.
 
 
 3
 * We review an order granting summary judgment independently without deference to the district court's conclusions. Beneficial Standard Life Ins. Co. v. Madariaga, 851 F.2d 271, 275 (9th Cir.1988). In determining whether any material fact is in dispute, we view the evidence in the light most favorable to the non-moving party. Ashton v. Cory, 780 F.2d 816, 818 (9th Cir.1986). In this matter both sides moved for a summary judgment.
 
 
 4
 The facts pertinent to this appeal are not in dispute. At the time this action was filed, the Secretary approved operation plans for unpatented mining claims within national park lands in Alaska without conducting on-site-field inspections and mineral examinations to determine whether a valuable discovery had been made.
 
 II
 
 5
 Appellants assert that in enacting the Alaska National Interests Lands Conservation Act (ANILCA), 16 U.S.C. Sec. 410hh-5 (1982), Congress intended to restrict mining on national park land to valid patented and unpatented claims existing on the effective date of the statute. We agree.
 
 ANILCA provides in pertinent part:
 
 6
 Subject to valid existing rights, and except as explicitly provided otherwise in the Act, the Federal lands within units of the National Park System established or expanded by or pursuant to this Act are hereby withdrawn from all forms of appropriation or disposal under the public land laws, including location, entry, and patent under the United States mining laws, disposition under the mineral leasing laws and from future selections by the State of Alaska and native corporation.
 
 
 7
 16 U.S.C. Sec. 410hh-5 (emphasis added).
 
 
 8
 Thus, since 1980, no one can enter national park land in Alaska for the purpose of locating minerals and filing a claim in order to engage in mining activities. Furthermore, a person possessing an unpatented claim[2] cannot conduct mining activities without the Secretary's prior approval. 36 C.F.R. Sec. 9.9(a) (1988).
 
 
 9
 Appellants contend that under ANILCA the Secretary cannot approve a plan to operate on national park land that is subject to an unpatented mining claim without first determining whether it is valid. The parties disagree as to what the Secretary must do to verify the validity of a claim. We have previously described the steps necessary to establish the validity of a mining claim as follows:
 
 
 10
 First. The claimant must "locate" the claim. The procedures for locating a claim are prescribed by local custom or state law. See 30 U.S.C. Sec. 28. These procedures usually require the claimant to (1) post some form of notice on the land; (2) mark the boundaries of the claim; (3) conduct preliminary excavation or discovery work on the claim; and (4) record a certificate in the local mining district office.
 
 
 11
 Second. The claimant must make a "discovery." This requires the discovery of a valuable mineral deposit on the claim.
 
 
 12
 Dredge Corp. v. Conn, 733 F.2d 704, 705-706 (9th Cir.1984) (footnote and citation omitted).
 
 
 13
 Appellants assert that ANILCA requires that an on-site inspection be made by an expert to verify that a valuable mineral discovery has been made before the validity of an unpatented claim can be determined and mining operations can be approved by the Secretary. Contrary to Appellants' contention, ANILCA does not prescribe to the Secretary the factors he should consider in exercising his discretion in determining the validity of a mining claim prior to approving a plan of operation. Appellants have not directed us to any language in ANILCA or its legislative history that demonstrates that Congress intended that a particular procedure be followed by the Secretary in conducting a validity examination. By its silence, Congress has left selection of the precise procedures employed in claim validity determination to the discretion of the Secretary.
 
 III
 
 14
 Appellants claim that the Mining in the Parks Act (MPA), 16 U.S.C. Sec. 1902 (1982) "contemplates that no mining will be approved unless the claim contains a valid discovery." Appellants' Opening Brief at 17. The quoted language is unsupported by citation to relevant statutory language or any court decision. We have examined the MPA. It does not impose a duty upon the Secretary to conduct a mineral examination to determine whether a valuable mineral discovery has been made by a claim. The MPA leaves it to the Secretary to determine the appropriate manner of determining whether an existing mineral right is valid.[3] We are persuaded that Congress has placed the question of the appropriate method of determining claim validity within the discretion of the Secretary.
 
 IV
 
 15
 Appellants also insist that the failure of the Secretary to conduct a field inspection and a mineral examination to determine the value of a discovery prior to the approval of a plan of operation violates the Administrative Procedure Act because it is arbitrary, capricious and an abuse of discretion under 5 U.S.C. Sec. 706(2)(A) (1982).
 
 
 16
 We review agency action to determine if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. Sec. 706(2)(A). To make this finding we "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971) (citations omitted).
 
 
 17
 Congress has directed that the Secretary "shall promote and regulate the use of the Federal areas known as national parks ... to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations." 16 U.S.C. Sec. 1 (1982).
 
 
 18
 The record when viewed in the light most favorable to the Appellants amply demonstrates that the Secretary considers factors relevant to the preservation and management of this nation's parks in Alaska prior to determining the validity of a claim. In assessing the Secretary's procedures in approving plans of operation, it is essential to note at the outset that some mining claims are in remote areas of Alaska, and that lengthy periods of bad weather and frozen ground make on-site inspection and mineral examination to determine the value of a discovery costly, complex, and time consuming. Because of extreme climatic conditions the time available for an on-site inspection is limited to three or four months.
 
 
 19
 The type of inspection and examination apparently demanded by Appellants takes years to complete. In addition, a mineral examination may require the use of heavy equipment that could inflict more serious damage to the environment than the activity proposed by the miners. Furthermore, in selecting the appropriate method to determine the validity of claims, the Secretary must consider the most efficient allocation of the agencies' resources and personnel. See Heckler v. Chaney, 470 U.S. 821, 831, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985) (in considering whether to enforce a statutory requirement, an agency may determine whether it has the resources to do so).
 
 
 20
 The Secretary has established a priority system to determine which procedure should be used to determine whether a mining claim is valid. As to certain claims, the Secretary has conducted lengthy field inspections and mineral examinations. As to other claims, the Secretary has selected different validation methods. Under the Secretary's priority system, mineral examinations are conducted on isolated claims as well as on those in previously undisturbed areas of the national park lands. Priority in the use of available resources is given to lode claims because they are more likely to be invalid than placer claims.[4] The Secretary checks the past history of mining activity in the area of the unpatented claim.
 
 
 21
 To ascertain claim validity, the Secretary examines Bureau of Land Management records to determine compliance with recordation requirements at the time the mineral deposit was located. Prior to deciding whether a valuable discovery has been made, the Secretary also reviews Geological Survey and Bureau of Mines reports and any other available information about the mine site. A claimant must file supplemental claim information relating to the value of the discovery which includes sampling assay results, geological testing and studies, and business records regarding exploration expenditures. In addition, after accumulating the foregoing information about the value of the discovery, the Secretary interrogates the claimant.
 
 
 22
 The process described above permits the Secretary to select which unpatented claims can be contested successfully and those which appear to contain valuable mineral deposits. Where approval is granted prior to any on-site mineral examination to verify the value of the discovery, the Secretary plans to make the type of complete validity examination requested by the Appellants as soon as manpower and resources permit.
 
 
 23
 Prior to the addition of land to the national parks in Alaska under ANILCA, there were approximately 286 mining claims. After the expansion in 1980, the number of mining claims within the boundaries of the national parks rose to approximately 4,580. A review of the status and mining records, as well as validity contests, reduced the number of mining claims by more than 50% to 2,170 by June of 1985.
 
 
 24
 We are persuaded that the procedure followed by the Secretary in determining which mining claims require a field inspection and a mineral examination by an expert to determine the value of a discovery prior to approving a plan of operations is not arbitrary or capricious and demonstrates an appropriate concern for the relevant factors. We find no abuse of discretion in the Secretary's decision to channel his limited resources to on-site mineral examinations of isolated claims or to areas previously not subjected to mining operations.
 
 V
 
 25
 Appellants also argue that the failure of the Secretary to require a field inspection and a mineral examination prior to claim approval violates the requirement that the Alaska land and waters added under this statute be administered "as new areas of the National Park System." 16 U.S.C. Sec. 410hh-2 (1982). Appellants contend that since the Secretary requires a mineral examination prior to approval in the national parks in the lower 48 states, the failure to do so in Alaska violates ANILCA.
 
 
 26
 Section 410hh-2 merely requires that the Alaskan areas added to the National Park System be governed by the same laws as the other national parks. As explained above, Congress has not imposed a requirement that the Secretary conduct a mineral examination before approving a plan of operation. The methodology employed in validity determination is left to the Secretary's discretion. The climate and geography of Alaska pose unique administrative problems.
 
 
 27
 The Secretary's explanation for using different methods of claim validation in Alaska can be summarized as follows: (1) The substantial increase in the number of claims within the jurisdiction of the NPS after the passage of ANILCA requires a deviation from the procedures in other parks; (2) The geography of the parks and claims in Alaska differ dramatically from the other areas within the NPS' jurisdiction; and (3) Limited financial resources require the establishment of a priority regarding the claims that require field inspection and a mineral examination prior to plan approval. The Secretary's priority system of claim validation in Alaska does not violate section 410hh-2.
 
 CONCLUSION
 
 28
 Congress has charged the Secretary with the responsibility of protecting the natural beauty of our national parks for coming generations of visitors. At the same time, Congress has authorized the Secretary to approve mining operations within these parks if valuable mineral deposits are discovered. This task is complicated by the fact that some of the park lands in Alaska are in remote areas amenable to field examinations during brief periods of time each year.
 
 
 29
 The record shows that the Secretary has been quite mindful of these competing goals in selecting those mine sites that require field inspection and an expert's examination of the value of mineral deposits prior to approval of mining operations, and those claims whose discovery can be verified by a review of pertinent geological studies, the success of other mines in the area, and an examination of the past history of the assay results of prior exploration at the site.
 
 
 30
 The allocation of his limited resources to isolated claims and to those areas not previously mined is illustrative of the Secretary's concern for the protection of Alaska's national parks. Appellants have failed to demonstrate that the Secretary has abused his discretion or acted arbitrarily and capriciously in the procedures adopted for the validation of mining claims and the approval of operating plans. Accordingly, the district court did not err in ordering summary judgment in favor of the Secretary.
 
 
 31
 AFFIRMED.
 
 
 
 *
 Manuel Lujan, Jr., the current Secretary of the Interior, is substituted for former Secretary Hodel. See Fed.R.App.P. 43(c)(1)
 
 
 **
 Honorable Edward Rafeedie, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 The district court granted the relief prayed for in Counts 1 and 2. The Secretary appealed. We affirmed. Northern Alaska Envtl. Center v. Hodel, 803 F.2d 466 (9th Cir.1986). This appeal is limited to the claim presented in Count 3
 
 
 [2]
 An unpatented claim is a possessory interest in a particular area solely for the purpose of mining that must be continually developed and not abandoned. Rocky Mt.Min.L.Inst., American Law of Mining, Sec. 30.05 (1988 ed.). A claim is "patented" when the claimant gains fee simple from the United States. Id. at Sec. 30.06. Unlike a patented claim, an unpatented claim can be forfeited, abandoned or exhausted. Id. at Sec. 30.05. The government or private individuals can contest an unpatented claim, whereas a contest cannot be brought against a patented claim. A contest is an administrative proceeding by the Department of the Interior to invalidate a claim. Id. at Sec. 30.06
 
 
 [3]
 The Secretary has discretion under the MPA to promulgate regulations deemed necessary or desirable for the management and preservation of the National Parks System. 16 U.S.C. Sec. 1902. The MPA provides:
 In order to preserve for the benefit of present and future generations the pristine beauty of areas of the National Park System, and to further the purposes of section 1, and 2 to 4 of the title, ..., all activities resulting from the exercise of valid existing mineral rights on patented or unpatented mining claims within any area of the National Park System shall be subject to such regulations prescribed by the Secretary of the Interior as he deems necessary or desirable for the preservation and management of those areas.
 16 U.S.C. Sec. 1902.
 
 
 [4]
 A "lode" claim involves "veins or lodes of quartz or other rock in place bearing gold, silver, cinnabar, lead, tin, copper, or other valuable deposits...." 30 U.S.C. Sec. 23 (1982). A "placer" claim involves all other forms of mineral deposits, including sand and gravel. 30 U.S.C. Sec. 35 (1982)