**Jan WRONCY, Plaintiff,**

v.

**BUREAU OF LAND MANAGEMENT, Defendant.**

Civ. No. 91–1174–FR.

United States District Court, D. Oregon.

Nov. 13, 1991.

Gary K. Kahn, Reeves, Kahn & Eder, Portland, Or., for plaintiff.

Charles H. Turner, U.S. Atty., Thomas C. Lee, Asst. U.S. Atty., Portland, Or., for defendant.

## OPINION

FRYE, District Judge:

The matter before the court is the motion of plaintiff, Jan Wroncy, for a temporary restraining order.

## INTRODUCTION

Wroncy brings this action against the defendant, the Bureau of Land Management (BLM), alleging that it violated the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.*, and the Administrative Procedures Act, 5 U.S.C. § 551 *et seq.*, when it failed to provide for public participation in its decision to fertilize approximately 20,000 acres of forest lands in the Coast Range Mountains of the State of Oregon.

## UNDISPUTED FACTS

Wroncy resides in the Coast Range Mountains of the State of Oregon near the target lands included in the fertilization project of the BLM. Wroncy has been active in monitoring the decisions of the BLM in the Coast Range Mountains for a number of years. Wroncy is sensitive to many chemicals, such as formaldehyde and ammonia.

On July 22, 1991, the BLM decided to fertilize approximately 20,000 acres of intensively managed forest lands in the Coast Range Resource Area of the Eugene District of the Coast Range Mountains with a urea fertilizer to be applied aerially in the form of pellets. In the environmental assessment prepared for this project, the BLM concluded "that completion of the proposed action does not constitute a major Federal action having a significant effect on the human environment. Therefore, an environmental impact statement or a supplement to the existing environmental impact statement is not necessary and will not be prepared." Exhibit B to Memorandum in Support of Plaintiff's Motion for Temporary Restraining Order (Decision Record, Environmental Assessment No. OR090-91-40), p. 1. The BLM had provided no public notification of the proposed fertilization project during the decision making stages and had provided no public notification of the Decision Record of July 22, 1991 within the thirty-day period following the decision.

Formaldehyde-based additives are used in the production of the fertilizer.

On September 16, 1991, Wroncy became aware of the fertilization project through a conversation with an official from the BLM. On September 19, 1991 and September 24, 1991, public affairs posters, which described the project in detail, were posted at six locations in the general area in an effort to inform the public about the fertilization project.

As a result of a telephone call from Wroncy to Daniel Bowman of the BLM, the

BLM sent Wroncy a copy of the environmental assessment relating to the fertilization project issued on July 22, 1991 and other documents upon which the BLM relied in making its environmental assessment.

The contract to apply the fertilizer was awarded by the BLM on October 3, 1991. The project is in progress.

On October 25, 1991, Wroncy filed a notice of appeal with the BLM requesting administrative review of the decision of the BLM to forego a formal period of time for public comment and the finding of the BLM in the environmental assessment of July 22, 1991 that the fertilization project would have no significant environmental impact.

On October 29, 1991, the Coast Range Area Manager of the BLM informed Wroncy in writing that the BLM was unable to consider her notice of appeal under the regulations on the grounds that the action of the BLM was final on July 22, 1991 and the regulations of the BLM did not provide for an appeal at the time she filed her appeal. The Coast Range Area Manager further stated that:

> The Interdisciplinary Team completed the EA, ROD, and FONSI and I signed them on July 22, 1991. Based on the fact that an almost identical project was reviewed by the public and state and local clearinghouse without comment and completed in two other Resource Areas on the Eugene District during January, 1991, that no public comments were received on the EA for this project, and the fact that no significant impacts were identified by the team of specialists who completed the EA; it was my decision to not make this EA available for public review prior to making a final decision.

Exhibit D to Memorandum in Support of Plaintiff's Motion for Temporary Restraining Order, p. 1.

In a letter dated November 4, 1991, Wroncy's physician states that Wroncy has reported to him that "she has been acutely ill for the past few days in association with application of methylene diurea containing formaldehyde urea binder to forest lands in her vicinity." Exhibit A to Memorandum

in Support of Plaintiff's Motion for Temporary Restraining Order, p. 1. Her physician reports that Wroncy's symptoms are consistent with her past medical history of chemical sensitivity. Her physician states that further exposure to formaldehyde and ammonia-containing urea can be expected to have an additional detrimental impact on her health and could potentially become very serious with the risk of long-term permanent effects. *Id.*

Wroncy would have submitted information to the BLM about the impacts on her health and the environment of formaldehyde and ammonia had she been informed of the project in a timely manner. Wroncy moves this court for an order temporarily restraining the BLM from implementing the project set out in Environmental Assessment No. OR090-91-40 until a hearing can be held on her motion for a preliminary injunction.

## APPLICABLE STANDARD

The Ninth Circuit uses two tests for determining whether a court should grant a preliminary injunction: a traditional test and an alternative test. *Caribbean Marine Servs. Co. v. Baldrige,* 844 F.2d 668 (9th Cir.1988). Under the traditional test, the court must consider 1) the likelihood that the moving party will prevail on the merits; 2) whether the balance of irreparable harm favors the moving party; and 3) whether the public interest favors the moving party. *Northern Alaska Envtl. Ctr. v. Hodel,* 803 F.2d 466, 471 (9th Cir.1986).

Under the alternative test, the court must consider 1) whether the motion raises serious questions on the merits; and 2) whether the balance of hardships tips decidedly in favor of the moving party. *Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League,* 634 F.2d 1197, 1202 (9th Cir.1980).

## CONTENTIONS OF THE PARTIES

Wroncy contends that the BLM has violated the provisions of NEPA and the regulations relating to NEPA when it failed to provide public participation in its decision

to carry out the fertilization project. Wroncy argues that her environment and her health, as well as her statutory rights under NEPA, have been and continue to be irreparably injured by the actions of the BLM.

The BLM contends that the hardship to the BLM in stopping the fertilization project outweighs the hardship to Wroncy in continuing the fertilization project. The BLM further argues that the finding of the BLM that there was no significant impact on the environment because of this project was a correct finding and should stand.

**1. *Success on the Merits***

■ 40 C.F.R. § 1501.4(e)(1) governs the actions of the BLM in this case and provides:

> In determining whether to prepare an environmental impact statement the Federal agency shall:
>
> . . . .
>
> (e) Prepare a finding of no significant impact (§ 1508.13), if the agency determines on the basis of the environmental assessment not to prepare a statement.
>
> (1) The agency shall make the finding of no significant impact available to the affected public as specified in § 1506.6.

Section 1506.6(b)(3) sets out a number of ways an agency can provide notice of a finding of no significant impact in the case of an action, the effects of which are primarily of local concern, including publication in local newspapers or through other media and direct notice to concerned individuals and organizations.

On December 9, 1988, in the case of *Friends of Walker Creek Wetlands, Inc. v. BLM,* Civil No. 88–779–MA, 1988 WL 163053, the Honorable Malcolm M. Marsh, United States District Court Judge, reviewed the above-cited provisions of the law and issued an injunction enjoining a timber harvest and requiring a 45–day period of public notice and comment on the grounds that "there was no public notice of the [finding of no significant impact]." Opinion, p. 15, lns. 18–19.

The BLM has long been required to make its finding of no significant environmental impact available to the affected public. There appears to have been no effort to make public the environmental assessment of July 22, 1991 in which the BLM concluded that there would be no significant environmental impact as a result of the fertilization project. The court finds, therefore, that Wroncy has shown a high likelihood of success on the merits in this case.

**2. *Irreparable Injury and the Public Interest***

■ If environmental harm is shown to be likely, the balance of harm will usually favor the issuance of an injunction to protect the environment. *Amoco Prod. Co. v. Village of Gambell, Alaska,* 480 U.S. 531, 545, 107 S.Ct. 1396, 1404, 94 L.Ed.2d 542 (1987). Wroncy has shown that personal injury to her as a result of the harm upon her environment is likely.

■ Further, the public interest in this case favors the issuing of the requested preliminary injunction. NEPA is a purely procedural statute which requires meaningful public involvement in decision making in accordance with specific regulations. A disregard for public participation is not a wrong compensable in any other manner. In this situation, the responsibility of the BLM was clearly set out in the regulations to NEPA and has been explained by prior case law. It would not be in the public interest for the court to excuse the BLM for its failure to involve the public because the fertilization project is now in progress.

## CONCLUSION

■ The motion of Jan Wroncy for a temporary restraining order is granted. The BLM and all of its officers, agents, servants and employees are temporarily restrained from taking any action pursuant to its Decision Record accompanying Environmental Assessment No. OR090–91–40 approved by the Coast Range Area Manager on July 22, 1991.

Pursuant to Federal Rule of Civil Procedure 65, this order shall expire ten days from the date of its entry. The motion of Jan Wroncy for a preliminary injunction

shall be heard on November 21, 1991 at 9:00 a.m. The BLM shall file responses to the motion for a preliminary injunction by November 19, 1991. Any reply shall be filed by November 20, 1991. All briefings should be hand-delivered or faxed between the parties.