MAKAH INDIAN TRIBE,
Plaintiff–Appellant,

v.

C. William VERITY, et al.,
Defendants–Appellees.

No. 88–3976.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 10, 1990.

Decided July 31, 1990.

Alvin J. Ziontz and Marc D. Slonim, Ziontz, Chestnut, Vernell, Berley & Slonim, Seattle, Wash., for plaintiff-appellant.

Narda Pierce, Sr. Asst. Atty. Gen., Olympia, Wash., Howard G. Arnett, Marceau, Karnopp, Petersen, Noteboom & Hubel, Bend, Or., and M. Alice Thurston, U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.

Before BROWNING, BEEZER and RYMER, Circuit Judges.

BEEZER, Circuit Judge:

The Makah Indian Tribe brought this action to challenge federal regulations allocating the ocean harvest of migrating Columbia River salmon. The district court dismissed the action for failure to join in-

dispensable parties. We affirm in part, reverse in part and remand.

## I

The Makah Indian Tribe resides at the northwest corner of the Olympic Peninsula of the State of Washington. Their historic fishing grounds extend forty miles out to sea. The Makah are guaranteed the right to fish in these grounds by treaty.[1]

To protect such Indian treaty rights, a complex judicial and administrative scheme has evolved that regulates the harvest of salmon that pass through these waters. The State of Washington regulates the fisheries within its jurisdiction, extending three miles out to sea, under the continuing jurisdiction of the Washington district court. *See United States v. Washington*, 384 F.Supp. 312 (W.D.Wash.1974), *aff'd*, 520 F.2d 676 (9th Cir.1975), *cert. denied*, 423 U.S. 1086, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976); *United States v. Washington*, 759 F.2d 1353, 1355 (9th Cir.1985) (en banc).[2] The Columbia River harvest is allocated under a similar arrangement overseen by the Oregon district court. *See Sohappy v. Smith/United States v. Oregon*, 302 F.Supp. 899 (D.Or.1969); *United States v. Oregon*, 699 F.Supp. 1456, 1458–60 (D.Or. 1988); Comment, *Sohappy v. Smith: Eight Years of Litigation Over Indian Fishing Rights*, 56 Or.L.Rev. 680 (1977).[3]

Outside the three-mile limit, ocean fishing is regulated by the federal government under the Fishery Conservation and Management Act of 1976 (FCMA), Pub.L. 94–265, 90 Stat. 331 (codified at 16 U.S.C. § 1801, *et seq.*). The FCMA establishes the Pacific Fishery Management Council (PFMC), which is composed of representatives of the States of Washington, Oregon, California and Idaho, one representative of the Indian tribes, and the federal government. 16 U.S.C. § 1852(a)(6). The PFMC develops a regional fishery management

---

1. Treaty of Neah Bay, Jan. 31, 1855, 12 Stat. 939.

2. The parties to *United States v. Washington* include the Puget Sound treaty tribes, ocean treaty tribes including the Makah, certain Columbia River tribes, and the State of Washing-

ton. The federal government is a party to the suit only in its capacity as trustee for the tribes. *See United States v. Washington*, 626 F.Supp. 1405 (W.D.Wash.1985).

3. The Makah are not a party to *United States v. Oregon* but have sought to intervene.

plan which must be consistent with applicable law, including Indian treaty rights, and must consider the regulations of coastal states. 16 U.S.C. §§ 1853(a)(1)(C), (b)(5); 50 C.F.R. § 602.11(f)(3)(ii). In 1978, the PFMC adopted a "framework plan" which calls for consideration of proposals by Indian tribes. After public meetings, 16 U.S.C. § 1852(i)(2), the PFMC recommends yearly harvest rates to the Secretary of Commerce, who promulgates regulations detailing ocean fishing allotments. 16 U.S.C. § 1854. The Secretary's regulations are subject to judicial review under the standards of the Administrative Procedure Act. 16 U.S.C. § 1855(d); 5 U.S.C. § 706(2).

This action concerns ocean quotas that coordinate with the most recent Columbia River Fish Management Plan. The plan was negotiated by the parties to the *Oregon* suit and approved by the *Oregon* court in 1988. Although not a party to the *Oregon* suit, the federal government participated in the negotiations and signed the plan. The plan sets minimum "escapement" levels for all Columbia River runs with quotas low enough to protect the weakest runs. For 1987, it assigned most of the allowable catch of the weakest run [4] to river fishermen, anticipating low ocean quotas.

After the plan reached final form, but before court approval, the PFMC adopted ocean harvest quotas for the 1987 season that were consistent with the plan. The Makah and three other ocean treaty tribes proposed higher ocean quotas, but their requests were rejected. The Secretary accepted the PFMC's recommendation, and corresponding regulations were published in May 1987. After a nine-day comment period, the regulations became final. Shortly thereafter, the Makah filed this suit challenging the quotas and the regulatory process. The district court dismissed the suit for failure to join the twenty-three treaty tribes of Puget Sound, the Columbia River and the ocean fishery.

We have jurisdiction over this timely appeal under 28 U.S.C. § 1291. We review a

district court's dismissal for failure to join an indispensable party for abuse of discretion. *Northern Alaska Envtl. Center v. Hodel*, 803 F.2d 466, 468 (9th Cir.1986).

## II

The Makah make two types of claims. First, they charge that the quotas adopted violate their treaty rights and are otherwise unfair. They request declaratory relief and an injunction setting a proposed higher quota. They also request a remand to the Secretary for an equitable adjustment for their 1987 losses.

Second, they charge that the Secretary's regulations violate the FCMA. They contend that the quotas were "the product of commitments made outside the administrative process." Specifically, they allege that the Secretary adopted quotas set in secret negotiations, violated notice and comment requirements of the APA, and ignored a quota proposed by the Makah. They also argue that the regulations violate the FCMA because they are arbitrary and capricious, have no basis in the record, and fail to describe Indian treaty rights. The Makah seek declaratory and injunctive relief requiring the Secretary to comply with the FCMA.

The district court determined that the Makah sought primarily reallocation of the harvest of Columbia River salmon. The court concluded it could not grant this relief without involving the twenty-three absent tribes. Because the other tribes are immune from suit unless they explicitly waive sovereign immunity, *see McClendon v. United States*, 885 F.2d 627, 629 (9th Cir.1989), the court found them to be indispensable parties under Fed.R.Civ.P. 19(b) and dismissed the suit.

The Makah challenge the court's order. They argue that there is no negative impact on the absent parties because they seek only enforcement of their own treaty rights and an increase in the overall harvest, not a reallocation among the treaty tribes. They also argue that their challenge is to the procedures followed by the Secretary, not just the resulting quotas.

4. The weakest run was from the Spring Creek Hatchery, located above Bonneville Dam. The run had been decimated several years earlier by an outbreak of disease.

### III

To determine whether a party is "indispensable" under Fed.R.Civ.P. 19,[5] a court must undertake a two-part analysis: it must first determine if an absent party is "necessary" to the suit; then if, as here, the party cannot be joined, the court must determine whether the party is "indispensible" so that in "equity and good conscience" the suit should be dismissed. The inquiry is a practical one and fact specific, *see Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118–19, 88 S.Ct. 733, 742–43, 19 L.Ed.2d 936 (1968), and is designed to avoid the harsh results of rigid application. *Eldredge v. Carpenters 46 Northern California Joint Apprenticeship & Training Comm.*, 662 F.2d 534, 537 (9th Cir.1981), *cert. denied*, 459 U.S. 917, 103 S.Ct. 231, 74 L.Ed.2d 183 (1982). The moving party has the burden of persuasion in arguing for dismissal. *Sierra Club v. Watt*, 608 F.Supp. 305, 312 (E.D.Cal.1985).

### A. *Necessary Party*

To determine if the absent party is necessary to the suit, the court must undertake another two-part analysis.

First, the court must decide if *complete relief* is possible among those already par-ties to the suit. This analysis is independent of the question whether relief is available to the absent party. *Eldredge*, 662 F.2d at 537.

Next, the court must determine whether the absent party has a *legally protected interest* in the suit. This interest must be more than a financial stake, *Northern Alaska*, 803 F.2d at 468, and more than speculation about a future event. *McLaughlin v. International Ass'n of Machinists*, 847 F.2d 620, 621 (9th Cir.1988). A fixed fund which a court is asked to allocate may create a protectable interest in beneficiaries of the fund. *See Wichita and Affiliated Tribes of Oklahoma v. Hodel*, 788 F.2d 765, 774 (D.C.Cir. 1986). Generally, there is no legally protected interest in particular agency procedures. *Northern Alaska*, 803 F.2d at 469.

If a legally protected interest exists, the court must further determine whether that interest will be *impaired or impeded* by the suit. Impairment may be minimized if the absent party is adequately represented in the suit. *Witchita*, 788 F.3d at 774. The United States may adequately represent an Indian tribe unless there is a conflict between the United States and the tribe. *Id.* at 774–75.

The court must also determine whether *risk of inconsistent rulings* will affect the

---

5. Fed.R.Civ.P. 19 provides:

(a) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

(b) *Determination by Court Whenever Joinder Not Feasible.* If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

parties present in the suit. Allocation of a limited fund to which absent parties are entitled may create such a risk. *See id.* at 774.

■ Applying these principles, the district court determined that the absent tribes were necessary to the suit. The court, viewing the 1987 harvest as a trust fund, held that it could not grant complete relief to the Makah because it would violate the treaty rights of other tribes. It held the absent tribes had an interest in the suit because "any share that goes to the Makah must come from [the] other tribes." It found that the federal government could not protect the interests of the absent tribes because those interests conflict among themselves. Finally, it held that the federal government could face inconsistent rulings if the Makah were awarded a quota that violated other tribes' treaty rights.

We agree that to the extent the Makah seek a reallocation of the 1987 harvest or challenge the Secretary's inter-tribal allocation decisions, the absent tribes may have an interest in the suit. The district court's conclusion that they are necessary parties to an adjudication of those claims was not an abuse of discretion.

We disagree, however, that the absent tribes are necessary to the Makah's procedural claims for which they seek prospective injunctive relief. Paragraphs 1.3.3 and 6.8.2 of the complaint go to the procedures the Secretary followed in promulgating the regulations. Procedures of the PFMC and the Secretary are subject to judicial review under the FCMA and the APA. Under the APA, any person adversely affected by agency action may seek review. *Arizona Power Pooling Ass'n v. Morton,* 527 F.2d

721, 727 (9th Cir.1975), *cert. denied,* 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976). Therefore, the district court has the authority to grant relief on the Makah's procedural claims without the presence of the other tribes. *See, e.g., Pacific Coast Fed'n of Fishermen's Ass'n v. Secretary of Commerce,* 494 F.Supp. 626, 628 (N.D.Cal.1980) (challenge by commercial fishermen to approval of 1980 regulations).

To the extent that the Makah seek relief that would affect only the future conduct of the administrative process, the claims set forth in ¶¶ 1.3.3 and 6.8.2 are reasonably susceptible to adjudication without the presence of other tribes. The absent tribes would not be prejudiced because all of the tribes have an equal interest in an administrative process that is lawful. We conclude that the absent tribes are not necessary parties to the request for injunctive relief based on the claims set forth in ¶¶ 1.3.3 and 6.8.2. However, the scope of the relief available to the Makah on their procedural claims is narrow. None of the Makah's other requests for relief would be appropriately considered in the absence of the other tribes.

**B. *Indispensable Party***

Only if the absent parties are "necessary" and cannot be joined must the court determine whether in "equity and good conscience" the case should be dismissed under Fed.R.Civ.P. 19(b). Since we hold that the absent tribes are not necessary to the Makah's procedural challenges, we conclude that those claims should not have been dismissed and need not inquire further.[6] With regard to the Makah's substantive claims requesting a higher quota, we must determine whether the absent tribes are indispensible under Rule 19(b), requiring another four-part analysis.

---

6. Even if the absent tribes were "necessary" to the Makah's procedural claims, they would not be "indispensable." We have adopted the "public rights" exception to traditional joinder rules. *See Conner v. Burford,* 848 F.2d 1441, 1459–61 (9th Cir.1988), *cert. denied,* sub nom., *Sun Exploration & Production Co. v. Lujan,* —— U.S. ——, 109 S.Ct. 1121, 103 L.Ed.2d 184 (1989). In *Conner,* mineral lessees argued that changing agency procedures to require an EIS before approving mining activity threatened their property rights; this was "insufficient to make the

lessees indispensable to this litigation." *Id.* at 1461; *see also Manygoats v. Kleppe,* 558 F.2d 556, 558–59 (10th Cir.1977) (tribe necessary but not indispensable to procedural challenge to environmental impact statement); *National Wildlife Fed'n v. Burford,* 835 F.2d 305, 333 (D.C.Cir.1987) ("administrative litigation commonly inflicts drastic effects on absent third parties" but "potential unfairness seems in accord with what we often tolerate").

Congress explicitly made FCMA regulations subject to judicial review. The Makah seek to

■ First, *prejudice* to any party resulting from a judgment militates toward dismissal of the suit. As in Rule 19(a)(2), the presence of a representative may lessen prejudice. Amicus status is not sufficient to satisfy this test, however, nor is ability to intervene if it requires waiver of immunity. *Wichita*, 788 F.2d at 775.

Second, *shaping of relief* to lessen prejudice may weigh against dismissal. The Supreme Court has encouraged shaping relief to avoid dismissal. *Provident*, 390 U.S. at 111–12, 88 S.Ct. at 738–39. If there is "more than enough pie to satisfy all," then such relief may be adequate. *Wichita*, 788 F.2d at 776.

■ Third, if an *adequate remedy*, even if not complete, can be awarded without the absent party, the suit may go forward. *Id.* at 777.

■ Finally, if no *alternative forum* is available to the plaintiff, the court should be "extra cautious" before dismissing the suit. *Id.*

Applying these principles, the district court concluded that the case should be dismissed. We agree with the court's analysis of the first three factors regarding the Makah's substantive claims. The district court found that prejudice was inevitable since "any relief would be detrimental to the other tribes"; the absent tribes had no proper representative because potential intertribal conflicts meant the United States could not represent all of them. The court held that there was no way to shape relief because the 1987 harvest was a limited resource and any relief would be detrimental to either the Makah or the absent tribes. Similarly, the only "adequate" remedy would be at the cost of the absent parties because the Makah request at a minimum an equitable adjustment by the Secretary. Allowing input from all the tribes would require their participation and was therefore unacceptable.

We disagree with the district court's analysis of the fourth factor. The court suggested the Makah should have brought this action as a subproceeding in *United States v. Washington*. It is not clear, however, that a challenge to the federal regulation of ocean fishing could be brought in *Washington*. The Secretary of Commerce is not a party to that action. *See Washington*, 626 F.Supp. at 1471. The suit concerns only fishing regulations promulgated by the State of Washington. The *Washington* court has not assumed jurisdiction over Columbia River runs or the ocean fishery generally.

Nevertheless, lack of an alternative forum does not automatically prevent dismissal of a suit. *Wichita*, 788 F.2d at 777. Sovereign immunity may leave a party with no forum for its claims. *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1326 (9th Cir. 1975), *cert. denied*, 425 U.S. 903, 96 S.Ct. 1492, 47 L.Ed.2d 752 (1976). We conclude that the district court's determination that the absent tribes are indispensible to the Makah's claim for reallocation was not an abuse of discretion.

## IV

■ The Makah request attorneys' fees against the federal government under the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA), and against the state government under 42 U.S.C. § 1988. Under both statutes, a party must be awarded some relief on the merits of the claim to be considered a "prevailing party" entitled to fees. *Hewitt v. Helms*, 482 U.S. 755, 760, 107 S.Ct. 2672, 2675–76, 96 L.Ed.2d 654 (1987) (§ 1983); *Lear Siegler, Inc. v. Lehman*, 893 F.2d 205, 208 (9th Cir.1990) (en banc) (per curiam) (EAJA). Reversal of an order dismissing a suit and remanding for further proceedings is not an award of relief on the merits. *Hanrahan v. Hampton*, 446 U.S. 754, 756–59, 100 S.Ct. 1987,

---

use that tool to question whether the 1987 regulations were lawfully adopted in the first place. To the extent the Makah seek to enforce the duty of the PFMC and the Secretary to follow statutory procedures in the future, this is a "public right" and this action becomes one that potentially benefits all who participate in the ocean fishery. The district court recognized this might be a claim, but held the public rights doctrine was "misplaced under the circumstances of this litigation" because the Makah sought primarily a reallocation of the quotas. Court's order at 29. We disagree and find the claims severable.

1988–90, 64 L.Ed.2d 670 (1980). We therefore decline to award fees on this appeal.

## V

The district court dismissed this action because the absent tribes were "indispensable" to the Makah's claims for a higher ocean quota. We hold that this determination was not an abuse of discretion. However, the Makah also challenge the legality of the regulatory process itself. The absent tribes are not necessary to these claims. Therefore, we hold that the procedural claims set forth in ¶¶ 1.3.3 and 6.8.2 of the Makah's complaint should not have been dismissed. In so doing, we make no ruling on the merits of these or any other claims that have been or may be presented in this action.

The district court's order dismissing the Makah's request for reallocation of the 1987 quotas is affirmed. The district court's order regarding the Makah's procedural claims is reversed and the action is remanded for further proceedings not inconsistent with this opinion. Each party is to bear its own costs.

AFFIRMED IN PART, REVERSED IN PART and REMANDED.