18 F.3d 1456
 28 Fed.R.Serv.3d 724
 QUILEUTE INDIAN TRIBE, Plaintiff-Appellant,
v.
Bruce BABBITT, in his capacity as Secretary of the Interior;
United States Department of Interior, Bureau of Indian
Affairs; Interior Board of Indian Appeals; United States
of America; Quinault Indian Nation, Defendants-Appellees.
 No. 92-36833.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 4, 1994.
Decided March 16, 1994.
 
 Lori Salzarulo, Susan L. Coskey, and Kerry E. Radcliffe, Garvey, Schubert & Barer, Seattle, WA, for appellant.
 Richard Reich and Eric J. Nielsen, Taholah, WA, for appellee Quinault Indian Nation.
 Jonathan F. Klein, John A. Bryson, and Andrea Nervi Ward, U.S. Dept. of Justice, Washington, DC, for the federal appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before: REAVLEY*, SKOPIL, and LEAVY, Circuit Judges.
 SKOPIL, Circuit Judge:
 
 
 1
 This is an action by the Quileute Indian Tribe against the United States and the Quinault Indian Nation, seeking to overturn the Department of Interior's decision that certain fractional property interests within the Quinault Reservation escheat to the Quinault Indian Nation rather than to the Quileute Indian Tribe. The district court dismissed the action pursuant to Federal Rule Civil Procedure 19(b), concluding that the Quinault Indian Nation is a necessary and indispensable party. We affirm.
 
 I.
 
 2
 Peter Alvin Ward, a member of the Makah Indian Tribe, died intestate in 1986. His property included fractional interests in trust lands on the Makah, Quinault, and Quileute reservations. A Department of Interior administrative law judge ruled that the property interests on the Quinault reservation should escheat to the Quileute Indian Tribe on the theory that the property was probably allotted originally to Quileute Indians.
 
 
 3
 The Quinault Indian Nation appealed that decision to the Interior Board of Indian Appeals (IBIA). The IBIA held that the Indian Land Consolidation Act (ILCA), 25 U.S.C. Sec. 2206 (1988), restricts escheat of trust land within an Indian reservation to the governing tribe of the reservation. Estate of Peter Ward, 19 IBIA 196, 212 (1991). The IBIA reversed the ALJ, ruling that all of the fractional property interests at issue on the Quinault reservation would escheat to the Quinault Indian Nation. Id.
 
 
 4
 The Quileute Indian Tribe thereafter brought this action, contending that its tribal rights on the Quinault Reservation were never abandoned or extinguished, and therefore section 2206 was wrongfully applied. The Quileute Indian Tribe sought a declaration that it is one of the "recognized tribal governments" of the Quinault reservation for purposes of section 2206. Finally, the Quileutes alleged that the IBIA's decision violates due process and is an unconstitutional taking without just compensation. The district court did not reach the merits of the statutory or constitutional challenges. Rather, it granted defendants' motion to dismiss on the ground that the Quinault Indian Nation is an indispensable party under Rule 19(b).
 
 II.
 
 5
 Rule 19 provides that a district court may dismiss an action if an absent party is determined to be "indispensable." Fed.R.Civ.P. 19(b). In applying Rule 19, the district court must first determine if an absent party is "necessary." Fed.R.Civ.P. 19(a). If a party is deemed to be necessary, the court must then determine if the party can be joined. If the party cannot be joined, the court finally must determine whether the party is indispensable so that in "equity and good conscience" the action should be dismissed. See Confederated Tribes of the Chehalis Indian Reservation v. Lujan, 928 F.2d 1496, 1498 (9th Cir.1991); Makah Indian Tribe v. Verity, 910 F.2d 555, 558 (9th Cir.1990).
 
 A. Necessary Party
 
 6
 Although there is no precise formula for whether a particular party is necessary to an action, Rule 19(a) contemplates a two-part analysis to aid the court in making that determination. Confederated Tribes, 928 F.2d at 1498. The court must consider whether complete relief is possible among those parties already in the action and whether the absent party has a claim to a legally protected interest in the outcome of the action. Id.
 
 
 7
 The district court concluded that complete relief in this case is not possible without resolving issues regarding the Quinaults' governing authority over and legal interest in the escheated property. We agree. The statute relied upon by the IBIA, 25 U.S.C. Sec. 2206, provides that certain fractional interests at the time of probate do not descend by intestacy or devise but must escheat to the tribe if the land interest is within that tribe's reservation or otherwise subject to that tribe's jurisdiction. Since the IBIA's decision, the statute has been amended to provide that such interests "shall escheat to the reservation's recognized tribal government." 25 U.S.C. Sec. 2206(a) (Supp.1990). Under either version of the statute, the Quinault Indian Nation clearly has a claim to the escheated property within its reservation. Moreover, the Quinault Indian Nation "undoubtedly" has a legal interest in any adjudication of its governing authority over the reservation. Confederated Tribes, 928 F.2d at 1498.
 
 
 8
 The Quileutes nevertheless contends that the Quinaults have no such claim or interest in a constitutional challenge to the statute. The district court rejected that argument, concluding that the "necessity of the Quinaults ... cannot be avoided by characterizing the issue as constitutionality of the ILCA. If the ILCA were to be found unconstitutional, it would affect the property interests of the Quinaults as well as the Quileutes." We agree. Declaring the statute to be unconstitutional either as applied or on its face would affect the property interests that have been determined to escheat to the Quinaults.
 
 
 9
 In Shermoen v. United States, 982 F.2d 1312, 1317 (9th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 2993, 125 L.Ed.2d 688 (1993), we rejected the argument that several tribes were not necessary parties because their interests were dependent upon the constitutionality of the statute that created the rights. We reasoned that Rule 19 forecloses such an analysis because all that is required is that the necessary party have a "claim" to an interest. Id. Thus, the determination whether the absent tribes were necessary parties to the action did not require a preliminary factual inquiry into the legality of the underlying statute. Id.; see also Keweenaw Bay Indian Community v. State, 11 F.3d 1341, 1347 (6th Cir.1993) (endorsing Shermoen ).
 
 
 10
 The district court correctly determined that the Quinault Indian Nation is a necessary party to this litigation. The Quinaults have a claim of legal interest in the litigation and complete relief would implicate the Quinaults' governing status. This conclusion is entirely consistent with our prior decisions. See Shermoen, 982 F.2d at 1317 (absent tribes are necessary parties to constitutional challenge to the Hoopa-Yurok Settlement Act); Confederated Tribes, 928 F.2d at 1498 (Quinault Indian Nation is a necessary party to action challenging the Quinaults' governing authority); Makah, 910 F.2d at 559 (absent tribes are necessary parties to Makah's challenge to Department of Interior's intertribal fish allocation decision); McClendon v. United States, 885 F.2d 627, 633 (9th Cir.1989) (absent tribe is a necessary party to an action seeking to enforce a lease agreement signed by the tribe).
 
 B. Joinder
 
 11
 Rule 19(a) contemplates that a necessary party will generally be joined as a party to the action. Indian tribes, however, are sovereign entities that possess " 'common-law immunity from suit traditionally enjoyed by sovereign powers.' " Imperial Granite Co. v. Pala Band of Mission Indians, 940 F.2d 1269, 1271 (9th Cir.1991) (quoting Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978)). Tribes may waive their sovereign immunity, but such waivers must be "expressed unequivocally" and cannot be implied. Santa Clara Pueblo, 436 U.S. at 58, 98 S.Ct. at 1677; McClendon, 885 F.2d at 629.
 
 
 12
 The Quileutes, relying on United States v. Oregon, 657 F.2d 1009 (9th Cir.1981), contend that the Quinault Indian Nation waived its immunity by participating in the administrative proceedings. The Quileutes' reliance on Oregon, however, is misplaced. There, the Yakima Tribe intervened in a court action and became a party to a consent decree. Several years later an action was brought to enforce the decree. We held that the tribe waived its sovereign immunity by intervening in the first action. Id. at 1014. Thus, Oregon has been interpreted to hold that "Indian tribes may, in certain circumstances, consent to suit by participation in litigation." McClendon, 885 F.2d at 630-31 n. 2. We cannot interpret Oregon, however, to hold that participation in administrative proceedings waives immunity for subsequent court proceedings. See Pan American Co. v. Sycuan Band of Mission Indians, 884 F.2d 416, 420 (9th Cir.1989) (noting that Oregon tests the "outer limits" of admonition against implied waivers).
 
 
 13
 Whether an Indian tribe's participation in administrative proceedings waives tribal immunity in an action seeking review of the agency's determination is thus a question of first impression. See Stock West Corp. v. Lujan, 982 F.2d 1389, 1398 (9th Cir.1993) (raised but not decided). In addressing this issue, we note first that tribal immunity is generally not asserted in administrative proceedings because tribes cannot impose sovereign immunity to bar the federal government from exercising its trust obligations. See Indians of the Quinault Reservation v. Commissioner of Indian Affairs, 9 IBIA 63 (1981) (IBIA will adjudicate cases without the Quinaults' participation even when the tribe has significant interests). Thus, tribal sovereignty does not extend to prevent the federal government from exercising its superior sovereign powers. See United States v. White Mountain Apache Tribe, 784 F.2d 917, 920 (9th Cir.1986); see also United States v. Red Lake Band of Chippewa Indians, 827 F.2d 380, 382 (8th Cir.1987) (tribes may not interpose sovereign immunity against the United States), cert. denied, 485 U.S. 935, 108 S.Ct. 1109, 99 L.Ed.2d 270 (1988); United States v. Yakima Tribal Court, 806 F.2d 853, 861 (9th Cir.1986) (United States may override tribal sovereign immunity), cert. denied, 481 U.S. 1069, 107 S.Ct. 2461, 95 L.Ed.2d 870 (1987). It is therefore not surprising that courts have upheld the assertion of tribal immunity in court proceedings following a tribe's participation in agency proceedings. See, e.g., Wichita and Affiliated Tribes of Oklahoma v. Hodel, 788 F.2d 765 (D.C.Cir.1986).
 
 
 14
 We conclude that a tribes's participation in an administrative proceeding does not waive tribal immunity in an action filed by another party seeking review of the agency's decision. The Quinaults could not assert immunity to prevent the agency's decision regarding the escheat of the property interests on the Quinault reservation. Moreover, the Quinaults' voluntary participation before the IBIA is not the express and unequivocal waiver of tribal immunity that we require in this circuit. See McClendon, 885 F.2d at 629. Accordingly, we hold that the Quinaults' participation in the administrative proceedings did not waive the tribe's immunity in the subsequent court action.
 
 C. Indispensable Party
 
 15
 Rule 19(b) provides a four-part test to determine whether a party is indispensable to an action. Confederated Tribes, 928 F.2d at 1499. The district court is directed to balance the following factors: (1) prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum. Id. We have noted, however, that when the necessary party is immune from suit, there may be "very little need for balancing Rule 19(b) factors because immunity itself may be viewed as the compelling factor." Id. Nevertheless, we have directed district courts to apply the four-part test to determine whether Indian tribes are indispensable parties. See id.
 
 
 16
 The district court applied the four-part test, noting that its application in this case was similar to the analysis in both Confederated Tribes, 928 F.2d at 1499-1500, and Makah, 910 F.2d at 559-60. The court concluded that the Quinaults "would suffer severe prejudice by not being a party to an action which could deplete the Quinaults' land interests or jeopardize their authority to govern the lands in question." The court reasoned that no remedy can be fashioned that would lessen the prejudice to the Quinaults and that the United States could not properly represent the interests of the Quinault Indian Nation. Finally, the court noted that although there exists no alternative forum for this intertribal conflict, that factor alone does not outweigh the other three factors.
 
 
 17
 We agree with the district court's analysis. The prejudice to the Quinault Indian Nation stems from the same legal interests that make the Quinaults a necessary party to the action. See Confederated Tribes, 928 F.2d at 1499 (noting that prejudice test is essentially the same as legal interest test). If the Quileutes were successful in either the statutory or constitutional challenge to the IBIA's decision, the Quinault Indian Nation would lose property interests and governing authority over those interests. No partial remedy can be fashioned that would not implicate those interests or would eliminate the prejudice to the Quinaults. Moreover, the district court correctly concluded that the United States cannot adequately represent the interests of the Quinault Indian Nation. In disputes involving intertribal conflicts, the United States cannot properly represent any of the tribes without compromising its trust obligations owed to all tribes. See Confederated Tribes, 928 F.2d at 1500; Makah, 910 F.2d at 560.
 
 
 18
 The only factor weighing in favor of allowing the Quileutes to maintain the action is the lack of any alternative forum. Nonetheless, the "lack of an alternative forum does not automatically prevent dismissal of a suit." Confederated Tribes, 928 F.2d at 1500; Makah, 910 F.2d at 560. "[P]laintiff's interest in litigating a claim may be outweighed by a tribe's interest in maintaining its sovereign immunity." Confederated Tribes, 928 F.2d at 1500. Thus, "dismissal turns on the fact that society has consciously opted to shield Indian tribes from suit without congressional or tribal consent." Enterprise Mgt. Consultants, Inc. v. United States, 883 F.2d 890, 894 (10th Cir.1989).
 
 
 19
 Accordingly, we affirm the district court's dismissal. It is unnecessary for us to review or decide the alternative grounds for affirmance raised by the Quinaults or the United States.
 
 
 20
 AFFIRMED.
 
 
 
 *
 The Honorable Thomas M. Reavley, Senior Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation