**Bill T. SWEET, et al., Petitioners,**

v.

**Maryanne HINZMAN, et al., Respondents.**

**No. C08–844 JLR.**

United States District Court,
W.D. Washington,
at Seattle.

Sept. 5, 2008.

Peter H. Haller, Rob Roy Smith, Stephen J. Kennedy, Ater Wynne, Seattle, WA, for Petitioners.

Peter T. Connick, Seattle, WA, for Respondents.

## ORDER

JAMES L. ROBART, District Judge.

This matter comes before the court on MaryAnne Hinzman, Arlene Ventura, Margaret Mullen, Katherine M. Barker, Frances De Los Angeles, Robert Hinzman, Nina Repin, Kanium Ventura, Jo–Anne Dominick, Jerry Enick, Nathan "Pat" Barker and Staci Moses's ("Respondents") motion to dismiss for failure to state a claim upon which relief can be granted

(Dkt.# 9) and motion to dismiss for failure to join an indispensable party (Dkt.# 4). Having reviewed the papers submitted by the parties and heard the argument of counsel, the court DENIES the motions. The parties are directed to file within ten (10) days of the date of this order a joint proposed scheduling order.

## I.  BACKGROUND

Bill T. Sweet, Carolyn Lubenau, Sharon Frelinger, Marilee Mai, Vyonda Rose, Lois Sweet Dorman, Linda Sweet Baxter, Ben Sweet and Charles "Chuck" Willoughby ("Petitioners") have sued members of the Snoqualmie Indian Tribal Council, in their official capacities, seeking writs of habeas corpus under the Indian Civil Rights Act ("ICRA"), 25 U.S.C. § 1303. Petitioners allege that their banishment, allegedly for acts constituting treason, imposes a severe restraint on their personal liberty. (Pet.(Dkt.# 1) ¶¶ 1, 2.) They contend that they will be denied access to critical services, including Indian Health Services' health care, and lose certain tribal employment opportunities. (Pet.¶ 2.) Additionally, they contend that exclusion from tribal lands and loss of tribal identity is a severe restraint on their personal liberty. (*Id.*) They "seek to be liberated from the unlawful restraint on their personal liberties imposed by Respondents' unlawful banishment resolution and to have the purported banishment resolution set aside and declared null and void." (Pet.¶ 3.)

## II.  ANALYSIS

### A.  Subject Matter Jurisdiction

"Where a defendant in its motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) asserts that the allegations in the complaint are insufficient to establish subject matter jurisdiction as a matter of law (to be distinguished from a claim that the allegations on which jurisdiction depends are not true as a matter of fact), we take the allegations in the plaintiff's complaint as true." *Whisnant v. United States,* 400 F.3d 1177, 1179 (9th Cir.2005). As the party asserting jurisdiction, Petitioners have the burden of proving the existence of subject matter jurisdiction. *Thompson v. McCombe,* 99 F.3d 352, 353 (9th Cir.1996).

### 1.  Habeas Actions Under the Indian Civil Rights Act

Respondents' first argument is that "[t]here is no authority which grants to the court the ability to create a judicial tribunal or to impose upon the Tribe rules and procedures which mirror the princip[les] of American jurisprudence for the purpose of resolving intra-tribal disputes related to elections or membership." (Second Mot. (Dkt.# 9) at 6–7.) Respondents are generally correct; however, they fail to acknowledge that federal courts have asserted jurisdiction to hear certain disputes regarding banishment actions. *See Poodry v. Tonawanda Band of Seneca Indians,* 85 F.3d 874 (2d Cir.1996). In the persuasive *Poodry* decision, the Second Circuit explained:

> The respondents invite us to hold that the petitioners—citizens of the United States residing within our borders—cannot challenge the threatened loss of their tribal membership, cultural and religious identity, and property under the laws of the United States. It is undisputed that no avenue for tribal review of the actions of the members of the Council of Chiefs is available in this case. Accordingly, if the district court lacks subject matter jurisdiction to entertain the applications for writs of habeas corpus, the petitioners have no remedy whatsoever. We decline the respondents' invitation to hold under current law basic American principles of due process are wholly irrelevant in these circumstances, or that the federal courts

are completely divested of authority to consider whether the alleged actions of the members of the tribal Council of Chiefs conform to those principles. *Id.* at 876–77. Respondents here extend the same invitation, urging the court to ignore the well-reasoned *Poodry* decision. This is an invitation that the court declines.

In *Poodry* the petitioners received written notices of banishment. 85 F.3d at 877–78. In addition to the notices there were allegations that there was an attempt to take at least some of the petitioners into custody and eject them from the reservation; petitioners were subject to harassment and assault; and they were denied electrical service to their homes and businesses as well as medical care. *Id.* at 878. They filed petitions for writs of habeas corpus claiming, among other things, that they had been denied several rights guaranteed under the ICRA. *Id.* at 879. The court framed the question as "whether an Indian stripped of tribal membership and 'banished' from a reservation has recourse in a federal forum to test the legality of the tribe's actions. More specifically, the issue is whether the habeas corpus provision of the Indian Civil Rights Act of 1968, 25 U.S.C. § 1303, allows a federal court to review punitive measures imposed by a tribe upon its members, when those measures involve 'banishment' rather than imprisonment." *Id.* In a lengthy opinion, the court answered the question in the affirmative. The court held: "Where, as here, petitioners seek to test the legality of orders of permanent banishment, a federal district court has subject matter jurisdiction to entertain applications for writs of habeas corpus." *Id.* at 897.

■ In an attempt to avoid the application of *Poodry* and its progeny, Respondents try to recast the actions in question here as election disputes. Petitioners contend that they are not challenging tribal elections rather that they "challenge the *manner* in which the banishments took place as violating the fundamental principles of due process and equal protection." (Resp.(Dkt.# 13) at 7.) The petition does describe certain election issues that led up to the banishment; however, Petitioners do not challenge those actions. Instead, they seek relief from and review of the banishment procedures employed by the tribal council and review of the final banishment decision. The court does not lack jurisdiction to review such matters. *See Poodry,* 85 F.3d at 876–97; *Quair v. Sisco,* 359 F.Supp.2d 948, 975–76 (E.D.Cal.2004) (determining that the court was "not addressing whether the decisions to disenroll and banish petitioners should or should not have been made in their particular cases. Rather, the court is addressing whether the General Council and the Tribe were required to comply with the requirements of Section 1302 in making these decisions. Therefore, the contention that this court lacks subject matter jurisdiction because the petitions ultimately involve decisions about internal tribal matters is not well-taken.")

The court adopts the reasoning and holding in the *Poodry* decision. The court finds that Petitioners here are not challenging internal elections; rather, Petitioners challenge a banishment decision under the habeas provisions of the ICRA. Sufficient facts have been alleged to survive a motion to dismiss. The court declines to dismiss the case on this ground.

**2. Exhaustion**

■ Respondents next argue that Petitioners' claims fail because they did not exhaust their tribal remedies. (Second Mot. at 17.) They contend that Petitioners have not "attempted to resolve their differences or even approach the Snoqualmie General Membership for reinstate-

ment...." (*Id.*) Respondents, without citing any declarations or other authority, further claim that at least some of Petitioners are "aware" of the procedure for challenging a banishment as they have been involved in the banishment/reinstatement of other members. (*See* Reply (Dkt.# 15) at 8.) Respondents do provide a chart of recent banishment and reinstatement actions along with a list of which Petitioners were involved in certain banishments and/or reinstatements; however, they do not explain what role those particular Petitioners played or what process was followed in those cases. (*See id.*) Respondents further contend that "Petitioners know they can ask for reconsideration or rehearing from the General Membership because of lack of due process." (Reply at 9.) In their petition, Petitioners allege the following: "Petitioners have no other remedy. There are no tribal remedies to exhaust.... There is no process for review of an action of the Tribal Council." (Pet.¶ 7.) In the absence of contrary evidence, at this stage of the proceedings this is enough to survive a motion to dismiss. The court finds that Petitioners have alleged that there are no tribal remedies to exhaust and declines to dismiss on this ground.

### B. Failure to State a Claim

■ When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court construes the complaint in the light most favorable to the non-moving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,* 416 F.3d 940, 946 (9th Cir.2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys.,* 135 F.3d 658, 661 (9th Cir.1998). Dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theo-

ry. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988). In the event dismissal is warranted, however, leave to amend should be granted unless amendment would be futile. *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir.2000).

■ Respondents claim that Petitioners' banishment does not qualify as detention under the ICRA. Instead of addressing the facts pleaded in the petition, Respondents merely assert without persuasive support that "no court has applied habeas review in cases where the purported restraint does not limit the petitioner's geographic movement.... Accordingly, the court may review the banishment of petitioners under § 1303 only if it affects their geographic movement." (Second Mot. at 18.) This is an odd proposition and not how other courts addressing similar issues have approached the issue. In fact, the *Poodry* court opined, "we think the existence of the orders of permanent banishment alone-even absent attempts to enforce them-would be sufficient to satisfy the jurisdictional prerequisites for habeas corpus." 85 F.3d at 895.

Respondents acknowledge the existence of *Poodry* but state that in a later case the *Poodry* "approach failed in the same Circuit." (Second Mot. at 19.) The case they cite, *Shenandoah v. U.S. Dep't of the Interior,* 159 F.3d 708, 713–14 (2d Cir.1998), does not overrule *Poodry* and is distinguishable because that case did not involve banishment. The court declined to allow the petition in *Shenandoah* because, "[t]he punishment that the petitioners faced in *Poodry* [ ] was considerably more severe than the punishments alleged by plaintiffs." *Id.* at 714. In their motion, Respondents fail to assert why the restraints allegedly imposed on Petitioners as pleaded in their petition fail to state a claim for relief. The court declines to grant the motion to dismiss on this ground.

## C. Failure to Join an Indispensable Party

■■ Respondents contend that Petitioners failed to join two indispensable parties, the Snoqualmie General Membership Council ("GMC"), which comprises all members of the Snoqualmie Tribe, and the Snoqualmie Tribe itself. Federal Rule of Civil Procedure 19 regarding required joinder of parties provides in relevant part: "A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring, double, multiple, or otherwise inconsistent obligations because of the interest." To determine whether a party is "indispensable" under Federal Rule of Civil Procedure 19 the court engages in a two-part analysis: "it must first determine if an absent party is 'necessary' to the suit; then if ... the party cannot be joined, the court must determine whether the party is 'indispensable' so that in 'equity and good conscience' the suit should be dismissed." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir.1990). The inquiry is practical and fact specific and is "designed to avoid the harsh results of rigid application." *Id.* Respondents bear the burden of persuasion in arguing for dismissal. *Id.*

■ Respondents argue that the absence of the Tribe from the case would prevent the court from according complete relief to Petitioners. (First Mot. (Dkt.# 4) at 10.) They argue that no other party, besides the Tribe, can grant tribal membership or distribute tribal benefits. (*Id.*)

Citing *Poodry*, Petitioners argue that "[a]n application for a writ of habeas corpus is never viewed as a suit against the sovereign, simply because the restraint for which review is sought, if indeed illegal, would be outside the power of an official acting in the sovereign's name." 85 F.3d at 899. The *Poodry* court went on the hold: "Because a petition for writ of habeas corpus is not properly a suit against the sovereign, the [tribe] is not a proper respondent." *Id.* The court finds the reasoning in *Poodry* persuasive and finds that the Snoqualmie Tribe is not a proper respondent.

Respondents next argue that the GMC is also necessary to grant complete relief. Their arguments focus on their contention that Petitioners are asking the court to compel the GMC to take action to reinstate Petitioners. In response, Petitioners claim that they are not requesting an order compelling the GMC to act or to force the GMC to reinstate and accept Petitioners as tribal members; rather they contend that they are requesting that the Tribal Council, "provide them with the rights they are afforded by the ICRA and the Bill of Rights of the Tribe's Constitution." (Resp. at 25.) They contend that it is the actions of the Respondents, members of the Tribal Council, leading up to the enactment of the banishment resolution that make clear that Respondents, not the GMC, are solely responsible for all aspects of banishment. They point to Respondents' (1) issuance of the "resolutions of discipline" accusing Petitioners of committing acts of treason and recommending that Petitioners be banished; (2) initiation of the "Emergency Snoqualmie Tribe Membership Meeting" to discuss Petitioners' banishment and placement of that issue on the agenda; (3) open letter prior to the Emergency Meeting making clear the Tribal Council was recommending full banishment; (4) enactment after the meeting

of the banishment resolution; and (5) submission of the banishment resolution to the United States Bureau of Indian Affairs. (*See* Pet. ¶¶ 61, 73–93.)

 The court declines to dismiss the complaint for failure to join an indispensable party. On the pleadings before it, the court finds that neither the Tribe nor the GMC are necessary to the suit. The allegations in the petition are sufficient, at this point, to establish that Petitioners have sued a party that can give them relief if the court orders it. Petitioners are not asking to be reinstated as members; rather, they seek a review of alleged deficiencies in the procedure employed by the Tribal Council in the banishment proceedings. The court also finds that the absence of the Tribe and the GMC will not impair or impede their ability to protect their interests. Petitioners have sued members of the Tribal Council in their official capacities. The court finds that as elected representatives of the Tribe, Respondents will protect the interests of the Tribe and the GMC. The court will allow the case to go forward as currently formulated.

### D. 94–62T SZ—*Lauzon v. De Los Angeles*

Lastly, Respondents contend that a case raising similar issues was dismissed by the Honorable Thomas S. Zilly and as a result, this case should be transferred to Judge Zilly. The court has reviewed the complaint in the 1994 *Lauzon* case and finds that it raised questions and sought relief that are different from the questions raised and relief being sought here. The court declines to transfer the case to Judge Zilly.

### III. CONCLUSION

For the foregoing reasons the court DENIES the motions to dismiss and the request for transfer. The parties are direct-ed to file within ten (10) days a joint proposed scheduling order.