
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| FRIENDS OF AMADOR COUNTY; BEA CRABTREE; JUNE GEARY, <br><br> Plaintiffs - Appellants, <br><br> v. <br><br> KENNETH SALAZAR, Secretary of the United States Department of the Interior; NATIONAL INDIAN GAMING COMMISSION; GEORGE SKIBINE, Acting Chairman of the National Indian Gaming Commission, <br><br> Defendants - Appellees, <br><br> and <br><br> BUENA VISTA RANCHERIA OF THE ME-WUK INDIANS, <br><br> Movant - Appellee. | No. 11-17996 <br><br> D.C. No. 2:10-cv-00348-WBS-CKD <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, Senior District Judge, Presiding

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Argued and Submitted January 15, 2014
San Francisco, California

Before: ALARCÓN, TALLMAN, and IKUTA, Circuit Judges.

Appellants Friends of Amador County, Bea Crabtree, and June Geary appeal the district court's dismissal of their action pursuant to Federal Rule of Civil Procedure ("Rule") 19 and its denial of their subsequent "Motion to Vacate Judgment or Order Dismissing Plaintiff's Complaint."[1]  They filed suit against the State of California, the Governor of California, the U.S. Department of the Interior ("DOI"), the Secretary of the Interior, the National Indian Gaming Commission ("NIGC"), and the Acting Chairman of the NIGC.  They raise several challenges relating to the Buena Vista Rancheria of Me-Wuk Indians' ("Tribe") gaming compact with California.  Specifically, they allege that (1) the DOI erroneously deemed the Tribe's 67.5 acres of fee-simple land as "Indian lands" eligible for gaming, (2) the federal government erred in granting the Tribe federal recognition over 20 years ago, and (3) the Tribe's gaming ordinance and tribal-state compact were invalid *ab initio*.

---

[1] While Appellants styled their motion as one to vacate the district court's dismissal under Rule 19, they urged the district court to either reconsider, amend, vacate, or modify the dismissal order pursuant to Rules 59 and 60.  For ease of reference, we refer to Appellants' motion as a motion to vacate.

The Tribe made a special appearance to file a motion to dismiss based on the Appellants' failure and inability to join the Tribe as a required and indispensable party under Rule 19. The district court granted the motion and denied the Appellants' motion to vacate the judgment of dismissal. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm both rulings.

Rule 19 sets the framework for determining whether a party is required and indispensable. We must decide first whether the Tribe is a "required" party that should normally be joined pursuant to Rule 19(a)(1). If the Tribe is a required party, we then ask whether its joinder in the underlying litigation is feasible. *See* Fed R. Civ. P. 19(b). If joinder is not feasible, we conclude our analysis by determining "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." *Id*. We review the district court's resolution of these questions for an abuse of discretion. *See Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1022 (9th Cir. 2002). And we apply the same standard of review to the district court's denial of Appellants' motion to vacate. *See McCarthy v. Mayo*, 827 F.2d 1310, 1314 (9th Cir. 1987).

We find no abuse of discretion in the district court's determination that the Tribe was a required party under Rule 19(a)(1). The Tribe claims several legally protected interests relating to the subject of the action. Appellants seek to

3

invalidate the Tribe's gaming compact with California, overturn the DOI and NIGC's determination that the Tribe's land enjoys "Indian lands" status under the Indian Gaming Regulatory Act ("IGRA"), and essentially direct the Secretary to extinguish the Tribe's federal recognition. The district court concluded correctly that disposing of the action in the Tribe's absence would, as a practical matter, impair or impede the Tribe's ability to protect these substantial interests. *See* Fed. R. Civ. P. 19(a)(1)(B)(i); *Am. Greyhound Racing, Inc.*, 305 F.3d at 1023 ("The interests of the tribes in their compacts are impaired and, not being parties, the tribes cannot defend those interests."); *Kescoli v. Babbitt*, 101 F.3d 1304, 1310 (9th Cir. 1996) (finding a protectible interest in a tribe's lease agreements).

Appellants contend that the United States can adequately represent the Tribe's interests. *See Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990) ("The United States may adequately represent an Indian tribe unless there is a conflict between the United States and the tribe."). The district court concluded otherwise. The government's response to the district court's questions on this issue at a status conference caused the district court to suspect that the government favored judicial resolution of the lawsuit as opposed to early dismissal, and would seek to avoid taking positions contrary to its national Indian policy, even if contrary to the Tribe's interest. These concerns have been illustrated by the

4

government's inaction to date. The government did not move for its own dismissal under Rule 19, and it has declined to take a position on the Tribe's Rule 19 motion in the district court and on appeal. Nor did the government appear at oral argument or file any brief in the appeal. These inactions indicate divergent interests between the Tribe and the government. We find no abuse of discretion in the district court's considered judgment. *See Pit River Home & Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1101 (9th Cir. 1994) ("We have held that the United States cannot adequately represent an absent tribe, when it may face competing interests.").

The district court concluded next that joinder would not be feasible because the Tribe enjoys sovereign immunity as a federally recognized Indian tribe. Appellants challenge the validity of the Tribe's federally recognized status but concede its existence. Indeed, the Tribe has been federally recognized since at least 1985, s*ee* Indian Tribal Entities Recognized and Eligible to Receive Services, 50 Fed. Reg. 6055-02 (Feb. 13, 1985), and it thus has "the immunities and privileges available to other federally acknowledged Indian tribes by virtue of their government-to-government relationship with the United States," Indian Entities Recognized and Eligible to Receive Services from the Board of Indian Affairs, 77 Fed. Reg. 47,868-01 (Aug. 10, 2012).

5

Appellants claim that the district court erred by disregarding their allegations that the Tribe should not be federally recognized. But the court cannot simply turn a blind eye to the Tribe's status as a federally recognized tribe in the Federal Register. *See* 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed[.]"); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice[.]"). As we have explained, "[f]ederally recognized Indian tribes enjoy sovereign immunity from suit." *Pit River Home & Agric. Coop. Ass'n*, 30 F.3d at 1100.

Appellants argue in the alternative that either the Administrative Procedure Act ("APA") or the IGRA abrogates, or at least precludes a tribe's reliance on, tribal sovereign immunity. Abrogation of sovereign immunity "cannot be implied but must be unequivocally expressed." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) (internal quotation marks omitted); *see also Krystal Energy Co. v. Navajo Nation*, 357 F.3d 1055, 1056 (9th Cir. 2004) ("Abrogation of tribal sovereign immunity may not be implied.").

The APA provides no such express abrogation. While it unequivocally waives the United States' sovereign immunity in certain suits, it does not do the same for Indian tribes. *See* 5 U.S.C. § 702. Appellants' argument also runs

6

counter to our precedent analyzing whether a tribe is necessary and indispensable even in APA actions. *See Makah Indian Tribe*, 910 F.2d at 558-60 (finding no abuse of discretion in the district court's Rule 19 dismissal because the involved tribes enjoyed sovereign immunity).

The IGRA likewise contains no express abrogation of tribal immunity for suits brought by private individuals challenging Indian-related administrative determinations. It provides that certain agency decisions may be appealed to the appropriate federal district court, but those actions must be brought pursuant to the APA, which, as described *supra*, does not expressly abrogate tribal immunity. 25 U.S.C. § 2714. Appellants point to no provision in the IGRA that unequivocally divests the Tribe of its sovereign immunity in suits like this, nor have we found one. We thus find no error in the district court's conclusion that the Tribe's sovereign immunity precludes joinder.

The district court did not abuse its discretion by concluding that the Tribe is indispensable under Rule 19(b)'s four-factor analysis. First, judgment in this lawsuit would prejudice the Tribe for the same reasons the Tribe is a required party. *See Am. Greyhound Racing, Inc.*, 305 F.3d at 1024-25 ("[T]he first factor of prejudice . . . largely duplicates the consideration that made a party necessary under Rule 19(a): a protectible interest that will be impaired or impeded by the

party's absence."). Second, we are not persuaded that the ameliorative measures proposed for the first time in Appellants' motion to vacate would shape Appellants' requested relief to lessen or avoid prejudice to the Tribe. The Appellants seek termination of the Tribe's gaming compact, "Indian lands" status, and status as a federally recognized tribe—the same interests whose protection requires the Tribe's presence. *See id.* at 1025 (no ability to shape relief where "[t]ermination of existing compacts is central to this litigation"). Third, while Appellants might be able to obtain an adequate judgment in the Tribe's absence, "the only 'adequate' remedy would be at the cost of [the Tribe]" because the Appellants request, at a minimum, a determination that the Tribe's land is not eligible Indian lands and that the Tribe's compact with the state is invalid *ab initio*. *See Makah Indian Tribe*, 910 F.2d at 560. Fourth, we acknowledge that Appellants may be left with no adequate remedy upon dismissal for non-joinder, "[b]ut this result is a common consequence of sovereign immunity, and [the Tribe's] interest in maintaining [its] sovereign immunity outweighs the [Appellants'] interest in litigating their claims." *Am. Greyhound Racing, Inc.*, 305 F.3d at 1025.

Finally, we agree that Appellants waived their reliance on the "public rights" exception by raising it below for the first time in their motion to vacate the judgment. Nonetheless, we find no abuse of discretion in the district court's

8

alternative holding rejecting this argument on its merits. For the public rights exception to preempt a party's Rule 19 protection, (1) "the litigation must transcend the private interests of the litigants and seek to vindicate a public right" and (2) "although the litigation may adversely affect the absent parties' interests, the litigation must not destroy the legal entitlements of the absent parties." *Kescoli*, 101 F.3d at 1311 (internal quotation marks omitted). As we have described, Appellants' lawsuit seeks to extinguish the Tribe's substantial legal entitlements. This precludes application of the public rights exception. *See Shermoen v. United States*, 982 F.2d 1312, 1319 (9th Cir. 1992) ("Because of the threat to the absent tribes' legal entitlements, and indeed to their sovereignty, posed by the present litigation, application of the public rights exception to the joinder rules would be inappropriate.").

For the reasons explained above, the district court did not abuse its discretion in dismissing this action under Rule 19 or in denying Appellants' subsequent motion to vacate.

AFFIRMED.