**CHEROKEE NATION OF OKLAHOMA, Plaintiff,**

v.

**Bruce BABBITT, et al., Defendants.**

**Civil Action No. 96–02284.**

United States District Court, District of Columbia.

Oct. 30, 1996.

---

James Hamilton and William J. Mertens, Swidler & Berlin, Washington, DC, for Plaintiff.

R. Anthony Rogers, Environment and Natural Resources Division, United States Department of Justice, with whom Lois J. Schiffer, Assistant U.S. Attorney General, appeared on the briefs, for Defendants.

Jill E. Grant and Wayne H. Bladh, Nordhaus, Haltom, Taylor, Taradash & Frye, L.L.P., Washington, DC, for Amicus Curiae The Delaware Tribe of Indians.

## TABLE OF CONTENTS

INTRODUCTION .................................................... 977
BACKGROUND ..................................................... 977
DISCUSSION ...................................................... 978
THE COURT SHALL GRANT THE DEFENDANTS' MOTION TO DISMISS
  BECAUSE THE DELAWARE TRIBE OF INDIANS IS A NECESSARY AND
  INDISPENSABLE PARTY THAT CANNOT BE JOINED DUE TO ITS SOVER-
  EIGN IMMUNITY................................................. 978
  I.  THE DELAWARE TRIBE IS A NECESSARY PARTY TO THIS ACTION
      UNDER FED.R.CIV.P. 19(a) ................................... 978
  II.  THE DELAWARE TRIBE'S SOVEREIGN IMMUNITY BARS ITS JOIN-
      DER AS A NECESSARY PARTY................................. 979
    A.  Indian Tribes Are Sovereign Entities ...................... 980
    B.  The Delaware Tribe has Sovereign Immunity .............. 981
      1.  Delaware Tribe of Indians is an Indian tribe ........... 981
      2.  The Delaware Tribe's sovereign immunity was not lost by implication as
        a necessary result of its dependent status or relinquished under the
        terms of the 1867 Agreement with the Cherokee Nation ............... 981
  III.  THE CASE MUST BE DISMISSED BECAUSE THE DELAWARE TRIBE
      IS AN INDISPENSABLE PARTY UNDER FED.R.CIV.P. 19(b) ............. 983
    A.  The Delaware Tribe Will Suffer Prejudice If It Is Absent From This Suit... 984
    B.  There Are No Alternative Remedies That Would Lessen the Prejudice to
      the Delaware ............................................. 985
    C.  An Adequate Remedy Can Be Awarded Without The Delaware Tribe ........ 985

D. There is No Alternative Judicial Remedy for the Cherokee if the Case is
Dismissed .................................................... 985
CONCLUSION ...................................................... 986

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

The defendants in the above-entitled case move this Court to dismiss this case for failure to join a necessary and indispensable party. The Defendants' Motion was filed October 9, 1996. The Delaware Tribe of Indians' Memorandum of *Amicus Curiae* in support thereof was filed October 9, 1996; and the plaintiff's Memorandum in opposition. thereto was filed October 15, 1996.

The plaintiff's claims arise from the U.S. Department of Interior's September 23, 1996 Final Decision retracting a May 1979 letter. The May 1979 letter stated that the Department of Interior ("the Department") would engage in government-to-government relations with the Delaware Tribe of Indians [1] ("the Delaware Tribe") only through the Cherokee Nation and that the Department would deal directly with the Delaware Tribe only for purposes of its claims against the United States. In retracting this letter in 1996, the Department acknowledged that the Delaware Tribe was a tribal entity recognized and eligible for funding and services from the Bureau of Indian Affairs ("the Bureau") by virtue of its status as an Indian tribe separate and independent from that of the Cherokee Nation.

Upon consideration of the parties' pleadings, the entire record herein, the law applicable thereto, and for the reasons set forth below, the Court finds that the Delaware Tribe is a necessary and indispensable party to this action that cannot be joined due to its sovereign immunity. Accordingly, the Court shall grant the defendants' Motion to Dismiss for Failure to Join an Indispensable Party.

### BACKGROUND

This dispute stems from the settlement of Delawares in Cherokee Nation territory in eastern Oklahoma over one hundred years ago. Prior to the settlement in America by Europeans, the Cherokee and Delaware Indians resided in the eastern portion of what is now the United States. In the 1830s, the federal government removed many Cherokee from the eastern United States to Indian Territory where they eventually settled in what is now northeastern Oklahoma.[2] The Delaware were removed west as well. In the period after the Civil War, pressure from railroads and white settlers forced removal of Indians from Kansas and elsewhere. By a treaty of 1866 ("1866 Treaty"), the Cherokee Nation agreed to accept groups of resettled Indians in its territory under certain conditions set forth therein, and, many, including groups of Delaware and Shawnee, were resettled in Cherokee territory.[3]

The terms and conditions on which the Delaware Tribe settled on Cherokee land are contained in an agreement of April 8, 1867 ("1867 Agreement") between the two groups, which was approved by President Johnson on April 11, 1867. The 1867 Agreement provided for the settlement of Delaware in Cherokee Nation territory in accordance with Article 15 of the 1866 Treaty between the Cherokee Nation and the United States. Article 15 of the Treaty provided that Indian groups could settle in Cherokee Nation territory east of the 96° of longitude by either: (1) becoming members of the Cherokee Nation, with the same rights and

---

1. When referring to the Delaware Tribe of Indians, the Court is speaking of the present day tribal organization representing the descendants of the Delaware who settled in Cherokee Nation territory in northeastern Oklahoma pursuant to an April 8, 1867 Agreement between the Delawares and the Cherokee Nation ("1867 Agreement"). The Delaware Tribe of Indians is a separate entity from the "Delaware Tribe of Western Oklahoma," a tribe whose status is not in question.

2. For a brief history of the Cherokee removal, *see* F. Cohen, *Handbook of Fed'l Indian Law* 79–84 (1982 ed.).

3. In the end, the Delaware Tribe became divided into five groups: the Munsee Delaware, the Kansas Delaware, the Absentee Delaware (now known as the Delaware Tribe of Western Oklahoma), a group of Delaware settling in Idaho, and the Delaware Tribe that settled in Cherokee Nation territory in eastern Oklahoma. *See* Amicus Memorandum at 1–2.

immunities, and the same participation in the national funds, as native Cherokees, with their children born thereafter being regarded as native Cherokee in all respects; or (2) maintaining their tribal laws, customs, and usages, and receiving a district of land set off for their use.

Since the time of the 1867 Agreement, there has been some uncertainty as to the Delaware Tribe's political status. After three United States Supreme Court decisions touching on the issue [4] and a long history of agency action, the Bureau issued a letter on May 24, 1979 to the Chairman of the Cherokee Delaware Business Committee notifying him that the Bureau was withdrawing its prior approval of the Committee's 1958 By–Laws because the Committee was "not capable of adequately protecting the interests of the Cherokee Delaware people" as required by a federal appropriation to satisfy Delawares' claim awards, and because the Committee had failed to meet a deadline the Bureau previously set for forming a Committee to draft adequate By–Laws.

In addition, the May 24, 1979 letter summarized the Bureau's position as to the Delaware Tribe's status. It stated that the Bureau's prior dealings with the Committee with respect to pre–1867 treaty claims had led to "misunderstandings" by some that those dealings "established for the Delawares a relationship with the Federal Government separate from that of the Cherokee Nation; such is not the case." *See* Letter of Acting Deputy Commissioner of the Bureau of Indian Affairs to Harry Secondine, Chairman of the Cherokee Delaware Business Committee, May 24, 1979.

On September 23, 1996, the Assistant Secretary of Indian Affairs, U.S. Department of Interior, issued a Notice of Final Agency Action, which retracted the May 1979 letter and thereby acknowledged the Delaware Tribe of Indians' status as a tribe independent of the Cherokee Nation. By its 1996 retraction, the Department recognized that the Delaware Tribe is a "separate sovereign," "with the same legal rights and responsibili-

ties as other tribes," and "eligible for funding and services from the Bureau of Indian Affairs by virtue of its status as an Indian tribe." *See* Final Decision to Retract 1979 Decision of the Deputy Commissioner of Indian Affairs Regarding the Delaware Tribe of Indians, 61 Fed.Reg. 50862, 50863 (Sept. 27, 1996).

The Cherokee Nation filed a Motion for a Temporary Restraining Order and a Preliminary Injunction as well as the Complaint in the above-entitled action on October 2, 1996.

## DISCUSSION

**THE COURT SHALL GRANT THE DEFENDANTS' MOTION TO DISMISS BECAUSE THE DELAWARE TRIBE OF INDIANS IS A NECESSARY AND INDISPENSABLE PARTY THAT CANNOT BE JOINED DUE TO ITS SOVEREIGN IMMUNITY.**

█ Rule 19 of the Federal Rules of Civil Procedure provides that a court may dismiss an action if an absent party is determined to be both "necessary" and "indispensable." Fed.R.Civ.P. 19. The United States Court of Appeals for this Circuit has held that a district court deciding a motion under Rule 19 must answer three questions: First, is the party necessary to the action and, thus should it be joined? Second, if the absent party should be joined, can the absent party be joined? Third, if the absent party cannot be joined, should the lawsuit proceed without that party or, instead, is the party indispensable to the action? *Western Maryland Ry. Co. v. Harbor Ins. Co.*, 910 F.2d 960, 963 n. 6 (D.C.Cir.1990). The moving party has the burden of persuasion in arguing for dismissal pursuant to Rule 19. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir.1990).

**I. THE DELAWARE TRIBE IS A NECESSARY PARTY TO THIS ACTION UNDER FED.R.CIV.P. 19(a).**

██ "In determining whether a party is 'necessary' under Rule 19(a), a court must consider whether 'complete relief' can be ac-

---

**4.** *Cherokee Nation v. Journeycake*, 155 U.S. 196, 15 S.Ct. 55, 39 L.Ed. 120 (1894); *Delaware Indians v. Cherokee Nation*, 193 U.S. 127, 24 S.Ct. 342, 48 L.Ed. 646 (1904); *Delaware Tribal Business Committee v. Weeks*, 430 U.S. 73, 97 S.Ct. 911, 51 L.Ed.2d 173 (1977).

corded among the existing parties, and whether the absent party has a 'legally protected interest' in the subject of the suit." *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir.1992) (quoting Fed.R.Civ.P. 19(a)), *cert. denied*, 509 U.S. 903, 113 S.Ct. 2993, 125 L.Ed.2d 688 (1993). As to the first factor, there is little doubt that the Cherokee Nation can obtain complete relief in the absence of the Delaware Tribe from this suit, and, thus, this concern does not make the Delaware Tribe a necessary party.

The Court concludes, however, that the Delaware Tribe has a "legally protected interest in the outcome of this action," and, therefore, is a necessary party thereto. The question at the heart of this dispute is whether the Department acted appropriately when it acknowledged, by retraction of the 1979 letter, that the Delaware Tribe is an independent tribe with the authority to have government-to-government relations with the federal government. If the Department's action is invalidated, the Delaware Tribe's legal identity surely will be affected. In short, a decision in this action favorable to the plaintiff could forever change the status of the Delaware Tribe. *See Pit River Home & Agricultural Co-op. Ass'n v. United States*, 30 F.3d 1088, 1099 (9th Cir.1994) (absent party is a necessary party because it has an interest in preserving its sovereign authority); *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1459 (9th Cir.1994) (Quinault Indian Nation is a necessary party because complete relief would implicate the Quinaults' governing status); *Confederated Tribes of the Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1498 (9th Cir.1991) (Quinault Indian Nation is a necessary party to action challenging the Quinaults' governing authority); *Kickapoo Tribe of Oklahoma v. Lujan*, 728 F.Supp. 791, 796 (D.D.C.1990) (Harris, J.) (Texas

Band of Kickapoo is a necessary party because it has an interest in protecting its own sovereignty).

In addition, the Delaware Tribe is a necessary party because the Delaware Tribe's rights under the 1867 Agreement, to which it was a party, are a central issue in this dispute. Because this Court must determine to what extent the rights of the Delaware were preserved or were relinquished under the 1867 Agreement, the Delaware Tribe must be a party to this action in order to assert what it believes are its rights preserved under the Agreement. *See Kickapoo Tribe of Indians of Kickapoo Reservation in Kansas v. Babbitt*, 43 F.3d 1491, 1498 (D.C.Cir.1995) (State of Kansas was necessary party because it was a party to disputed compact); *McClendon v. United States*, 885 F.2d 627, 633 (9th Cir.1989) (absent tribe is a necessary party to an action seeking to enforce a lease agreement signed by the tribe); *Enterprise Management Consultants, Inc. v. United States, ex. rel. Hodel*, 883 F.2d 890, 893 (10th Cir.1989) (tribe's interest in the validity of contract it signed would be directly affected by relief plaintiff seeks). Thus, under Rule 19, the Delaware Tribe is necessary to the action because "the disposition of the action in the [Delawares'] absence may as a practical matter impair or impede the [Delawares'] ability to protect [its] interest." Fed.R.Civ.P. 19(a)(2)(i).[5] Because it is a necessary party, the Delaware Tribe should be joined in this action. However, as hereinafter discussed, sovereign immunity is a bar to such joinder.

## II. THE DELAWARE TRIBE'S SOVEREIGN IMMUNITY BARS ITS JOINDER AS A NECESSARY PARTY.

■ Having found the Delaware Tribe necessary to this action, the Court must de-

5. The United States Court of Appeals for the Ninth Circuit held in *Makah Indian Tribe v. Verity*, 910 F.2d 555, 559 (9th Cir.1990), that an absent tribe was not a necessary party in an action challenging the procedures the Secretary of Interior followed in promulgating certain regulations. There, the court found that "[t]o the extent that the Makah [sought] relief that would affect only the future conduct of the administrative process," the claims were reasonably susceptible to adjudication without the presence of oth-

er tribes. The court further stated, however, that "[n]one of the Makah's other requests for relief would be appropriately considered in the absence of the other tribes." *Id.* In this case, the plaintiff seeks a rescission of a past administrative act. Thus, the rule in *Makah Indian Tribe* allowing a claim for prospective relief to proceed in the absence of another affected tribe is inapplicable. In any event, it is not binding in this Circuit or this Court.

termine whether it can be joined and, if not, whether it is indispensable to the action, rendering dismissal of the case necessary. *See Pit River Home,* 30 F.3d at 1099; *Confederated Tribes,* 928 F.2d at 1499. Without an explicit waiver, the Delaware Tribe cannot be joined as a necessary party if it has sovereign immunity. Whether a defendant has sovereign immunity is a question of law to be decided by the Court.[6] Based on the following analysis, the Court concludes that the Delaware Tribe has sovereign immunity and cannot be joined in this action.

### A. Indian Tribes Are Sovereign Entities.

■ Indian tribes are "distinct, independent political communities," pre-existing the Constitution, with their own sovereign authority. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 56, 98 S.Ct. 1670, 1675–76, 56 L.Ed.2d 106 (1978). The powers of Indian tribes are, in general, "inherent powers of a limited sovereignty which has never been extinguished." *United States v. Wheeler,* 435 U.S. 313, 322, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978) (quoting F. Cohen, *Handbook of Fed'l Indian Law* 122 (1945)) (emphasis omitted). To exercise sovereign authority, an Indian tribe need not show that such power has been granted to it by the federal government, either by explicit recognition of the tribe or implicitly through a course of dealing.[7] *Bottomly v. Passamaquoddy Tribe,* 599 F.2d 1061, 1065 (1st Cir.1979). Rather, sovereign power in Indian tribes is inherent.

One definitive aspect of a tribe's sovereignty is its immunity from suit. *Santa Clara Pueblo,* 436 U.S. at 58, 98 S.Ct. at 1677; *United States v. United States Fidelity & Guaranty Co.,* 309 U.S. 506, 512, 60 S.Ct. 653, 656, 84 L.Ed. 894 (1940); *Bottomly,* 599 F.2d at 1066. As the Supreme Court noted in *Santa Clara Pueblo:*

> Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers. This aspect of tribal sovereignty, like all others, is subject to the superior and plenary control of Congress. But "without congressional authorization," the "Indian Nations are exempt from suit."

*Santa Clara Pueblo,* 436 U.S. at 58, 98 S.Ct. at 1677 (quoting *United States Fidelity & Guaranty Co.,* 309 U.S. at 512, 60 S.Ct. at 656) (citations omitted).

Indian tribes, however, no longer possess "the full attributes of sovereignty." *Wheeler,* 435 U.S. at 323, 98 S.Ct. at 1086. Their incorporation within territory of the United States, and their acceptance of its protection, necessarily divested them of some aspects of sovereignty which they had previously exercised. By specific treaty provision, they surrendered other sovereign powers; by statute, in the exercise of its plenary control, Congress has removed still others. *Id.* Yet, while existing only at the sufferance of Congress and subject to complete defeasance, sovereign power "not withdrawn by treaty or statute, or by implication as a necessary result of [the tribes'] dependent status," is retained by Indian tribes. *Id.*

The parties have briefed the issue of sovereign immunity and the Court has heard oral argument on it as well. Because the facts material to the issue of sovereign immunity, as set forth below, are undisputed, the Court is able to decide this issue as a matter of law.

7. Accordingly, the parties' extensive briefing on the Delaware's recognition or lack thereof by the federal government and the tribe's historical course of dealing with the federal government, while useful to the process of discerning the Delaware Tribe's political status, is not dispositive to the issue of sovereign immunity.

6. *See In re Estate of Ferdinand Marcos Human Rights Litigation,* 94 F.3d 539, 543 (9th Cir.1996) (existence of subject matter jurisdiction under Foreign Sovereign Immunities Act is question of law); *Tinney v. Shores,* 77 F.3d 378, 380 (11th Cir.1996) (sovereign immunity under state law is question of law); *United States v. $277,000 U.S. Currency,* 69 F.3d 1491, 1493 (9th Cir.1995) (whether government enjoys sovereign immunity in particular application is question of law); *Eckert Int'l, Inc. v. Government of Sovereign Democratic Republic of Fiji,* 32 F.3d 77, 79 (4th Cir.1994) (existence of subject matter jurisdiction under Foreign Sovereign Immunities Act is question of law); *Rodriguez v. Transnave, Inc.,* 8 F.3d 284, 287 (5th Cir.1993) (whether sovereign immunity exists is question of law).

## B. The Delaware Tribe has Sovereign Immunity.

This Court is left with the tasks of determining whether the Delaware are still an Indian Tribe, and, if so, whether its sovereign immunity has been divested by treaty or statute or lost "by implication as a necessary result of [its] dependent status." *Id.*

### 1. Delaware Tribe of Indians is an Indian tribe.

■ In *Delaware Tribal Business Committee v. Weeks*, 430 U.S. 73, 97 S.Ct. 911, 51 L.Ed.2d 173 (1977), the United States Supreme Court found that the Delaware Tribe was an Indian tribe. In that case, descendants of the Kansas Delaware challenged their exclusion from the distribution of funds to certain Delaware Indians pursuant to an award by the Indian Claims Commission. The Supreme Court determined that the Kansas Delaware had severed their relations with the tribe by electing under an 1866 Treaty to become United States citizens, and, therefore, were not a recognized tribal entity but simply individual Indians with no vested rights in any tribal property.

In contrast, the Court found that the Delaware Tribe, whose ancestors settled in Cherokee territory, had "over the years maintained a distinct group identity," and, today, are a "federally recognized tribe." *Id.* at 77, 97 S.Ct. at 915. As a result, the "Cherokee Delaware," unlike the Kansas Delaware, were a tribal entity entitled to share in the distribution of claims funds. *Id.* at 82–83, 97 S.Ct. at 917–18. Although the contours of the Delaware's status as a "tribe" were not addressed in *Weeks,* the Court clearly acknowledged that the Delaware Tribe was a distinct Indian tribe.

### 2. The Delaware Tribe's sovereign immunity was not lost by implication as a necessary result of its dependent status or relinquished under the terms of the 1867 Agreement with the Cherokee Nation.

The plaintiff does not dispute that all Delaware were once part of an independent *sovereign* Delaware Tribe living in what is now the northeastern region of the United States when the Europeans first settled there. Given that the Delaware still are an Indian tribe, as the Supreme Court concluded in *Weeks,* the only remaining question is whether the Delaware Tribe, whose ancestors resettled in Cherokee territory, lost its sovereign immunity by implication as a necessary result of its dependent status or was divested of it by treaty or statute.

Although courts have found implicit divestiture of a tribe's sovereign power in a number of areas such as free alienation of Indian land to non-Indians, *Oneida Indian Nation of New York State v. Oneida County, New York,* 414 U.S. 661, 667–68, 94 S.Ct. 772, 777–78, 39 L.Ed.2d 73 (1974), and trial of non-members of a tribe in tribal courts, *Oliphant v. Suquamish Indian Tribe,* 435 U.S. 191, 195, 98 S.Ct. 1011, 1014, 55 L.Ed.2d 209 (1978), the plaintiff has not alleged any implicit divestiture in this case.

■ The plaintiff argues instead that the Delaware Tribe lost its sovereign immunity when it entered into the 1867 Agreement with the Cherokee Nation, and moved to Cherokee Nation territory pursuant to the 1866 Treaty between the Cherokee and the United States. The defendants and the Delaware Tribe, as *amicus,* argue that the Delaware Tribe did not lose such power under the terms of the 1867 Agreement.

The facts are not disputed by the parties. The United States entered into the 1866 Treaty with the Cherokee Nation, which provided for the resettlement of Indian tribes friendly to the United States in Cherokee Nation territory in eastern Oklahoma. The ancestors of the current day Delaware Tribe, by and through the 1867 Agreement with the Cherokee Nation, settled in Cherokee territory pursuant to Article 15 of 1866 Treaty, and made two payments to the Cherokee Nation pursuant to that Agreement. The legal effect of those two payments, and whether, by entering into the 1867 Agreement, the Delaware Tribe, whose members settled in Cherokee territory, retained or relinquished its identity as a sovereign power with respect to the resettled Delaware—questions of law—are disputed by the parties.

More specifically, the parties disagree over the provision of Article 15 of the 1866 Treaty pursuant to which the Delaware settled in Cherokee territory. The plaintiff argues that the Delaware settled in Cherokee Nation territory under Article 15's first provision, and, thus, were "incorporated into and ever after remain[ed] a part of the Cherokee Nation, on equal terms in every respect with native citizens." Treaty with the Cherokee, 1866, Article 15. The defendants and the Delaware Tribe argue that the Delaware settled in Cherokee territory pursuant to the second provision of Article 15, and, thus, by the Treaty's terms, preserved their tribal organization, maintained their tribal laws, customs and usages, not inconsistent with the constitution and laws of the Cherokee Nation, and were given a district of country set off for their use by metes and bounds equal to one hundred and sixty acres for each man, woman, and child.

This Court is mindful of the United States Supreme Court's interpretation of the 1867 Agreement and 1866 Treaty in *Cherokee Nation v. Journeycake*, 155 U.S. 196, 15 S.Ct. 55, 39 L.Ed. 120 (1894). In that case, the Court held that the payments made to the Cherokee Nation for the resettlement of the Delaware into its territory was for the value of the lands received by the Delaware individuals and "as sufficient compensation for an interest in the entire body of lands." *Id.* at 215, 15 S.Ct. at 62. According to the Supreme Court, the Delawares were consolidated with and absorbed into the Cherokee Nation, "as individual members thereof." *Id.* at 213, 15 S.Ct. at 61.

In *Journeycake* and a subsequent Supreme Court decision, *Delaware Indians v. Cherokee Nation*, 193 U.S. 127, 24 S.Ct. 342, 48 L.Ed. 646 (1904), the Court established that the Delawares who settled in Cherokee

territory pursuant to the 1867 Agreement, as full members of the Cherokee Nation, had identical rights and obligations as every other member of the Cherokee Nation except for the unique occupancy rights conferred upon the Delawares under the 1867 Agreement. *Id.* at 142–43, 24 S.Ct. at 348. In all other respects, "the Delawares were made part of the Cherokee Nation"; they became "a component party upon equal terms with other citizens." *Id.* at 144, 24 S.Ct. at 349.

Thus, this Court can only conclude that Delaware settled in Cherokee Nation territory pursuant to the first provision of Article 15, under which the settling Delaware became full and equal Cherokee Nation citizens. This is consistent with The Supreme Court's holdings in *Journeycake* and *Delaware Indians*.[8]

■ Acknowledging that the Delaware merged with the Cherokee Nation as individuals and that the participating Delawares became full Cherokee citizens with the same rights and immunities as native Cherokees, this Court, however, does not conclude that the Delaware Tribe lost all sovereign power under the terms of the 1867 Agreement. Instead, given that the Supreme Court found in *Weeks* that the Delaware Tribe has existed as a tribe after the 1867 Agreement, this Court reaches the conclusion that the Delaware retained those characteristics inherent in all tribes, not expressly relinquished under the Agreement—one of which is immunity from suit.

Under the 1867 Agreement, the Cherokee agreed to sell land to the Delaware for their occupancy if the Delaware electing to remove to Cherokee territory fulfilled certain conditions set forth in the Agreement, including payments into the Cherokee national funds. On fulfillment by the Delawares of all the

---

**8.** This Court is well aware of the anomalous circumstances created by the *Journeycake* and *Weeks* decisions. While the Court in *Journeycake* concluded that the Delawares were fully absorbed into the Cherokee nation, the *Weeks* decision recognizes that the Delaware have maintained themselves as a tribe. Justice Stevens, dissenting in *Weeks*, reconciles these decisions by concluding that the Delaware who settled in Cherokee territory "ceased being members of the Delaware Tribe in 1867, when they joined the

Cherokee Nation," but, "to be sure," had "reconstituted themselves as a recognized Indian tribe" in 1974. Another explanation could be that the Delaware agreed to disband its government under the 1867 Agreement, but never abandoned its tribal status. Regardless of which theory one adopts, the Supreme Court undoubtedly has found that the Delaware Tribe, whose ancestors settled in Cherokee territory and were absorbed into the Cherokee Nation, are an Indian tribe.

terms and conditions of the Agreement, all Delawares registered to participate in the removal to Cherokee territory became "members of the Cherokee Nation with the same rights and immunities, and the same participation (and no other) in the national funds, as native Cherokees save as [provided in the Agreement]." The children thereafter born of such Delawares "so incorporated into the Cherokee Nation" became regarded in all respects as native Cherokees. Articles of Agreement between the Cherokee Nation and the Delawares, April 8, 1867 (Attachment C to Complaint).

The Agreement, however, makes no provisions for the abandonment by the Delaware of their tribal status or the relinquishment of any sovereign power vested in the Delaware Tribe. While it could be inferred from the Agreement that the Delaware intended to assimilate into the Cherokee tribe and abandon their own tribal status, it cannot be said that the Agreement *expressly* calls for such a result.

▇ Federal statutes or treaties which appear to limit the powers of an Indian tribe *are not* to be unduly extended by doubtful inference. *See Ex Parte Mayfield,* 141 U.S. 107, 115, 116, 11 S.Ct. 939, 941, 35 L.Ed. 635 (1891). "What is not expressly limited remains within the domain of tribal sovereignty." *Native Village of Venetie I.R.A. Council v. State of Alaska,* 687 F.Supp. 1380, 1390 (D.Ak.1988) (quoting F. Cohen, *Handbook of Fed'l Indian Law* 123 (1942 ed.)), *aff'd in part* and *rev'd in part on other grounds,* 944 F.2d 548 (9th Cir.1991); *United States v. Consolidated Wounded Knee Cases,* 389 F.Supp. 235, 237 (D.Neb. & D.S.D.1975) (except as "expressly qualified," "full powers of internal sovereignty are vested in the Indian tribes and their [duly] constituted organs of government") (quoting F. Cohen, *Handbook of Fed'l Indian Law* at 123), *opinion adopted by United States v. Dodge,* 538 F.2d 770 (8th Cir.1976), *cert. denied sub nom. Cooper v. United States,* 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 547 (1977). Following these principles, this Court is unable to find that the Delaware Tribe relinquished all sovereign power when it entered the 1867 Agreement. While such relinquishment would have been a logical step under a program to consolidate the Delawares with the Cherokee, there is no express provision providing for such action.

▇ Had the Delaware abandoned their distinct identity as a tribe when they were absorbed into and consolidated with the Cherokee Nation as individual citizens, then there would be no issue of a separate sovereign entity since no "tribe" would exist to claim such status.[9] The Supreme Court, however, has found that the Delaware are a "tribe"—be it only for claims purposes, as the Cherokee assert, or as an independent federally recognized tribe, as the Delaware argue. As a "tribe," Delaware are presumed to possess sovereign immunity. *Native Village of Venetie I.R.A. Council v. State of Alaska,* 944 F.2d 548, 556 (9th Cir.1991). An Indian group's status as a tribe and the sovereign authority it possesses as such are inextricably linked and cannot be pulled apart unless done clearly by treaty or statute. Such an "express" relinquishment of sovereign immunity is not contained in the 1867 Agreement. Accordingly, the Delaware Tribe has sovereign immunity at this time.

III. THE CASE MUST BE DISMISSED BECAUSE THE DELAWARE TRIBE IS AN INDISPENSABLE PARTY UNDER FED.R.CIV.P. 19(b).

Because the Delaware Tribe cannot be joined, the Court must determine whether the party is indispensable, thereby requiring dismissal of the case. To determine whether a party is indispensable, Rule 19(b) requires the Court to consider four factors: (1) to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other

---

9. The argument that sovereign power was lost because the Delaware tribal government was dissolved as a result of the 1867 Agreement is unavailing. Even if a tribal government is dissolved, the tribe's immunity stays with the tribe if the tribe survives. *See United States Fidelity & Guaranty Co.,* 309 U.S. at 512, 60 S.Ct. at 656 (Eastern Cherokee Tribe still possessed sovereign immunity though its tribal government had been dissolved).

measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Fed.R.Civ.P. 19(b).

## A. The Delaware Tribe Will Suffer Prejudice If It Is Absent From This Suit.

█ The Delaware Tribe undoubtedly will suffer prejudice if the Cherokee Nation is successful in nullifying the Department's retraction of the 1979 letter. The same interests of the Delaware Tribe that make it a necessary party—its interest in preserving its sovereignty and political identity—are the same interests that would make the Delaware Tribe prejudiced by a decision in its absence. *See Confederated Tribes*, 928 F.2d at 1499 (prejudice stems from the same legal interests making someone a necessary party to the action).

█ In addition, and notwithstanding the vigorous argument of the Cherokee Nation to the contrary, the United States cannot adequately represent the interests of the Delaware Tribe. This case involves a conflict between two separate Indian groups, with different languages, ethnic backgrounds, religions, and cultures. Courts have consistently held that the United States cannot adequately represent the interests of an Indian tribe when the case involves an intertribal conflict because it may subject the Government to inconsistent duties and obligations. This problem arises from the federal government's role as a trustee to all Indian tribes. *See Pit River Home*, 30 F.3d at 1101 (finding that the United States cannot adequately represent the interests of tribe because case involved "intertribal conflicts" which could subject the Government to "inconsistent duties or obligations"); *Quileute*, 18 F.3d at 1460 ("In disputes involving intertribal conflicts, the United States cannot properly represent any of the tribes without compromising its trust obligations owed to all tribes."); *Shermoen*, 982 F.2d at 1318 ("it is unlikely that the government could sufficiently represent the competing interests and divergent concerns of the tribes, for the government must also act in keeping with its role and obligations as trustee"); *Confederated Tribes*, 928 F.2d at 1500 ("United States cannot adequately represent the [tribe's] interest without compromising the trust obligation owed to the plaintiff tribes"); *Makah Indian Tribe*, 910 F.2d at 560 (the United States cannot properly represent any tribe when there exists the possibility for intertribal conflicts); *Wichita and Affiliated Tribes of Oklahoma v. Hodel*, 788 F.2d 765, 775 (D.C.Cir.1986).

Relying on *Ramah Navajo School Board v. Babbitt*, 87 F.3d 1338, 1350–52 (D.C.Cir. 1996), the plaintiff argues that the United States can adequately represent the Delaware Tribe's interest because no conflict exists between the United States and the absent party. In that case, the Court found that the absent tribe was not indispensable because the United States' interests were not in conflict with the absent tribe. The absent tribe's only potential interest in that case was in having certain enjoined funds distributed according to the Secretary of Interior's Notice, under which each tribe would receive its estimated *pro rata* share of less than $100. Because the Notice did not give the Secretary discretion to give one of the absent parties a greater share than another absent party, there was no concern that the tribes' interests might conflict with one another and keep the Secretary from adequately representing them all. *Id.* at 1351–52.

In this case, unlike in *Ramah Navajo School Board*, the tribes' interests are mutually exclusive. Therefore, there is a risk, absent in *Ramah Navajo School Board*, that the government's role as trustee for other Indian tribes may compromise its loyalty to the Delaware Tribe's position as *Amicus Curiae* in this litigation. *But see Cassidy v. United States*, 875 F.Supp. 1438, 1443–45 (E.D.Wash.1994) (concluding that the United States could adequately represent the interests of an absent tribe because the federal government held a position in accord with interests of absent tribe).[10]

10. Unlike in this case, the government in *Cassidy* was not taking the position of one Indian tribe,

In addition, while the government currently defends the challenged action of the Department—which is in accord with the interests of the Delaware Tribe—there is no guarantee that the government will continue to vigorously litigate this dispute in the future. Politics, budget considerations, and policy priorities, as well as many other factors, will directly influence the government's legal position and fervor in prosecuting this case. The Delaware Tribe, whose very political identity is at stake, may have adopted a different approach to this litigation than that of the government. Because the United States cannot adequately represent the interests of the Delaware Tribe, the Court finds that Delaware Tribe will suffer prejudice if the case proceeds in its absence and the Cherokee Nation is successful on its claims.

## B. There Are No Alternative Remedies That Would Lessen the Prejudice to the Delaware.

There is no relief or remedy that would lessen the prejudice the Delaware Tribe would suffer if the Court decided this action in its absence. A decision in favor of the Cherokee would fundamentally change the political authority and identity of the Delaware Tribe from the status acknowledged by the Department's action. Any relief granted to the Cherokee Nation short of invalidation of the Department's action—the Cherokee's current claim—would not meet the Cherokee's interests. Thus, the Court cannot address the plaintiff's claims without prejudicing the rights of the Delaware Tribe. *See Wichita & Affiliated Tribes of Oklahoma*, 788 F.2d at 776 (when interests are mutually exclusive, the court cannot afford relief on one party without affecting the rights of the other party).

## C. An Adequate Remedy Can Be Awarded Without The Delaware Tribe.

The third factor this Court must weigh in determining whether the Delaware Tribe is indispensable is whether an adequate remedy is available in the Delaware Tribe's absence

for whom it is a trustee, over the position of another tribe, for whom it is also a trustee. The

to this litigation. If an adequate remedy, even if not complete, can be awarded without the absent party, the suit may go forward. *Makah Indian Tribe*, 910 F.2d at 560.

Here, an adequate remedy could be awarded without the Delaware Tribe because the Cherokee Nation seeks its full relief from the Department—a rescission of the Department's September 23, 1996 Final Decision— and seeks no relief from the Delaware Tribe. Therefore, this factor weighs in favor of going forward with the litigation. However, the other factors discussed herein far outweigh the considerations of this third factor, and lead the Court to the opposite conclusion—namely, that the Delaware Tribe is indispensable and the litigation cannot proceed without its participation.

## D. There is No Alternative Judicial Remedy for the Cherokee if the Case is Dismissed.

There appears to be no alternative *judicial* forum where the Cherokee Nation can seek declaratory and injunctive relief regarding the Department's retraction of the 1979 letter. This fact, however, does not prevent this Court from finding the Delaware Tribe to be indispensable and dismissing the case. *Pit River Home*, 30 F.3d at 1102 (citing *Makah Indian Tribe*, 910 F.2d at 560 ("lack of an alternative forum does not automatically prevent dismissal of a suit.") and *Confederated Tribes*, 928 F.2d at 1500 (plaintiff's suit dismissed despite lack of alternative forum for plaintiff tribe to bring action for injunctive relief against Secretary of Interior)).

The Court is sympathetic to the circumstances in which the plaintiff finds itself. Nonetheless, this nation has consciously opted to shield Indian tribes from suit without congressional or tribal consent, and this consideration outweighs the plaintiff's interest in litigating its claims in this forum. This is not to say that the federal government places no value on the Cherokee Nation's interest in preserving the scope of its sovereignty, but, rather, that the courts' role "in adjusting relations between and among tribes and their

Court accordingly concludes that *Cassidy* is distinguishable from this case.

members" is as "restrained" as such authority in Congress is "broad." *Shermoen,* 982 F.2d at 1320–21 (quoting *Santa Clara Pueblo,* 436 U.S. at 72, 98 S.Ct. at 1684). Thus, the Cherokee Nation is not left without any avenues for redress of what it considers a "lawless" action on the part of the Department. Rather, the Cherokee Nation's remedy lies with the political branches of the federal government.

In sum, the disposition of this case absent the Delaware Tribe will impair the Delawares' ability to protect its interest in maintaining the Department's retraction of the 1979 letter. Accordingly, the Court holds that the Delaware Tribe is a necessary and indispensable party under Rule 19. Because the Delaware Tribe cannot be joined in this action by virtue of its sovereign immunity, the case shall be dismissed.

## CONCLUSION

By this decision, the Court is in no way commenting on the merit of the Cherokee Nation's claims, nor is the Court dismissing the Cherokee Nation's sense of outrage over the Department's decision. Further, the Court commends counsel for the excellent quality of their briefs and oral argument before the Court. Had this case not involved Indian tribes, which are "distinct, independent political communities" within the United States, with their own sovereign authority and immunity, the Court might have adjudicated this case as a simple Administrative Procedures Act action. However, this Court must respect the sovereign right of Indian tribes not to be sued. This duty of the Court supersedes all others.

For the foregoing reasons, the Court finds that the Delaware Tribe is a necessary and indispensable party to this action. In addition, the Court finds that the Delaware Tribe has sovereign immunity, and, therefore, cannot be joined in this action. Accordingly, the Court shall grant the defendants' Motion to Dismiss for Failure to Join an Indispensable Party. The Court shall issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.

## *ORDER*

For the reasons set forth in the Court's Memorandum Opinion of even date herewith, it is, by the Court, this 30 day of October, 1996,

ORDERED that the defendants' Motion to Dismiss for Failure to Join an Indispensable Party shall be, and hereby is, GRANTED; and, it is

FURTHER ORDERED that the above-entitled case shall be, and hereby is, DISMISSED from the dockets of this Court; and, it is

FURTHER ORDERED that any and all outstanding motions in the above-entitled case shall be, and hereby are, rendered and declared MOOT.